Danny L. WRIGHT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 70A01–0407–CR–321.

Court of Appeals of Indiana.

Oct. 28, 2005.

J.J. Paul, III, John D. Fierek, Voyles Zahn Paul Hogan & Merriman, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Danny L. Wright appeals his convictions after a jury trial of dealing in cocaine, a Class A felony,[1] dealing in cocaine with intent to deliver, a Class A felony,[2] and possession of marijuana with intent to deliver, a Class D felony.[3] He raises five issues on appeal:

1. Whether the trial court properly issued a search warrant for Wright's house;

2. Whether the trial court abused its discretion in limiting Wright's examination of a State's witness regarding sentencing benefits the witness received pursuant to a plea agreement;

3. Whether the trial court erred in allowing into evidence previous drug transactions between Wright and the State's witness;

4. Whether the trial court properly sentenced Wright; and

5. Whether Wright's trial counsel provided ineffective assistance.

We affirm in part and remand in part.

## FACTS AND PROCEDURAL HISTORY

On January 22, 2003, Daniel Webb was acting as a confidential informant for the Rush County Sheriff's Department. He contacted Christopher Springman to purchase one-half ounce of cocaine. Webb and Springman drove to Wright's house and were informed the cocaine would cost $700.00. Webb and Springman arranged to return to Wright's house later to make the buy.

Captain Joseph Jarman contacted other officers to set up surveillance for a controlled buy. At approximately 8:00 p.m., officers began surveillance of Wright's residence. Shortly thereafter, Captain Jarman and Officer Ron Jarman met with Webb. Officer Jarman searched Webb and removed $4.00 from him. Captain Jarman supplied Webb with a listening device and gave Webb $700.00 in marked bills for the buy. The officers watched Webb as he walked to Springman's apartment building and entered it.

Captain Jarman heard Webb give Springman the money. Webb and Springman left the building and the two of them drove to Wright's house. Springman entered Wright's house, remained a few minutes, and came back out. When Springman left Wright's residence, he walked across the street to his father's house,

---

1. Ind.Code § 35–48–4–1(b)(1).

2. Ind.Code § 35–48–4–1(b)(1).

3. Ind.Code § 35–48–4–10.

where he took some of the cocaine for his own use. Webb had told Springman he could keep some of the cocaine for himself. Springman walked back to the car and gave Webb the rest of the cocaine.

Springman dropped Webb off at the American Legion, where police met Webb. Webb gave the cocaine to Captain Jarman, he was again searched, and he gave his statement to officers.

Captain Jarman and Officer Bradley Hatfield contacted the prosecutor, who obtained a search warrant for Wright's house after a telephone conference with Judge Jack Tandy of the Shelby Superior Court. The search warrant was executed within several hours. Captain Jarman found the marked buy money in Wright's pocket. Officer Hatfield advised Wright of his *Miranda* rights, and Wright showed the police cocaine and marijuana in his bedroom. Police recovered cocaine, marijuana, money and two scales from Wright's residence.

Additional facts will be provided as needed.

## DISCUSSION AND DECISION

1. *Validity of Search Warrant* [4]

Wright argues there were insufficient facts on which the judge could make an independent determination of probable cause to issue a search warrant, the buy was not adequately controlled, Webb was not reliable, and the State did not connect the money or the drugs with Wright.

■■■ The federal and state constitutions guarantee a court will not issue a search warrant without probable cause.

*Overstreet v. State*, 783 N.E.2d 1140, 1157 (Ind.2003), *cert. denied* 540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004). Probable cause to search a premises is established when there is a sufficient basis of fact to permit a reasonably prudent person to believe a search of the premises will uncover evidence of a crime. *Id.* The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom. *Id.* Our duty on review is simply to ensure the magistrate had a substantial basis for concluding there was probable cause. *Id.* "Substantial basis" requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.*

■■■ When deciding whether to issue a search warrant, the issuing judge's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Creekmore v. State*, 800 N.E.2d 230, 233–34 (Ind.Ct.App.2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *reh'g denied* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983)). We review the trial court's ruling on a motion to suppress in a manner similar to other sufficiency questions. *Id.* We affirm if substantial evidence of probative value supports the trial court's decision. *Id.* We may neither re-

4. Wright contends the trial court should have granted his motion to suppress the evidence obtained pursuant to the warrant. The State contends his argument is moot because he did not appeal that ruling. The trial court denied Wright's motion to suppress on May 12, 2004. A motion requesting the trial court certify that order for an interlocutory appeal was filed the next day and denied the same day. (*See* App. at 95–99.) Wright did attempt to appeal this ruling to our court, and his claim the trial court erred in denying the motion to suppress is not moot on that ground.

weigh the evidence nor assess the credibility of the witnesses, and we must consider the evidence in the light most favorable to the trial court's decision. *Id.*

■ During the telephone conference, Captain Jarman told the judge he had engaged in a controlled buy of cocaine using Webb as a confidential informant. He said he had used Webb in sixteen to seventeen cases and had always found him truthful. Officer Brad Hartford told the judge he had dealt with Springman on several occasions and also knew Webb. This testimony was sufficient to establish Webb's reliability.

Officers testified in the telephone conference they searched Webb, removed money from him and gave him $700.00 in marked bills. They testified they overheard Webb's conversation with Springman; specifically, they heard Webb give Springman the money. Webb and Springman were not under constant surveillance, but Detective Jarman testified he listened to the conversation after Springman left Wright's house and got back into the car; Springman told Webb that he "broke him off a piece" of the cocaine before giving it to Webb. (Tr. at 2–13, 15.) The search warrant was not based solely on Webb's testimony; police officers testified they could see and hear most of what occurred.

Wright notes Webb was subjected only to a "routine pat down" search (Appellant's Br. at 9) and no shoes, socks, or cavities were searched. Wright offers no authority in support of his apparent premise such an extended search is required, and we decline to so hold. We considered this argument in *Hudson v. State*, 462 N.E.2d 1077, 1083 (Ind.Ct.App.1984), where Hudson attacked the sufficiency of pat-down searches, insisting a strip-search and a complete body cavity check were necessary. We determined pat-down searches of informants are sufficient in a controlled buy, and noted the adequacy of controls in a police buy goes to the weight and credibility of the evidence presented rather than to the State's burden of proof.

■ In reviewing the facts supporting an application for a search warrant, absolute certainty is not required; we require only a substantial basis for a prudent person to believe contraband will be found in the location denoted. *Cheever–Ortiz v. State*, 825 N.E.2d 867, 871–72 (Ind.Ct.App. 2005). Here, a substantial basis was provided to the issuing magistrate, and the search warrant was properly issued.

2. *Testimony Regarding Plea Bargain*

Wright argues the trial court improperly restricted him from questioning Springman with respect to the benefits he received from pleading guilty. We agree, but find the error harmless.

■ The right to cross-examine witnesses is one of the fundamental rights of our criminal justice system, but it is subject to reasonable limitations placed at the discretion of the trial judge. *Smith v. State*, 721 N.E.2d 213, 219 (Ind.1999). Trial judges have wide latitude to impose reasonable limits based on concerns including harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Id.* Violations of the right to cross-examine are subject to harmless-error analysis. *Id.* To determine whether an error is harmless, we look to several factors, including the strength of the prosecution's case, the importance of the witness' testimony, whether the testimony was corroborated, the nature of the cross-examination that did occur, and whether the witness' testimony was repetitive. *Id.*

■ Wright argues he should have been allowed to question Springman to

contrast the sentence Springman would have faced for a Class A felony with that Springman in fact received in exchange for his plea of guilty to a Class B felony. Wright is correct; he should have been allowed to question Springman about the extent of the benefit Springman received from the plea agreement. Our Indiana Supreme Court noted in *Jarrett v. State*, 498 N.E.2d 967, 968–69 (Ind.1986) that

> significant harm results when the jury is prevented from learning the extent of benefit received by a witness in exchange for his testimony. It would be obviously relevant and proper for a jury to consider the amount of compensation a witness expects to receive for his testimony. It is equally proper for this jury to know the quantity of benefit to accusing witnesses. It is quite relevant whether they are thereby avoiding imprisonment of ten days, ten weeks, or ten years.
>
> The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Against the crucial role of full and proper cross-examination, the State's desire to censor sentencing information is clearly subordinate.

*See also Newman v. State*, 263 Ind. 569, 572, 334 N.E.2d 684, 686 (1975) ("An accomplice who turns 'state's evidence' and agrees to 'cooperate' with the State in consideration of leniency or the dismissal of charges by the State, to be realistic, is being bribed, regardless of the fact that public policy has approved such action in the interest of effective law enforcement.").

■ In the present case, however, this error was harmless. Convictions will not be reversed if the State can demonstrate beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Spivey v. State*, 761 N.E.2d 831, 836 (Ind.2002). There the evidence established Spivey participated in a burglary. In the course of the burglary both Spivey and his accomplice struck the victim, who died as a result. The Court found, in light of the information before the jury, that additional evidence of a witness' motive to cover up his own involvement was "of little consequence." *Id.* It accordingly concluded if the trial court erred in limiting cross-examination, such error was harmless.

Springman was not the only witness who testified against Wright. Webb, the purchaser of the cocaine, testified, as did the police officers who conducted the visual and audio surveillance. The officers found in Wright's possession the marked buy money and additional cocaine packaged for sale. In light of the evidence presented, we find harmless the trial court's error in failing to allow a full cross-examination of Springman.

### 3. *Other Drug Transactions*

Wright filed, and the trial court granted, a motion *in limine* preventing the State from introducing evidence of prior drug transactions between Springman and Wright.

■ Wright presented one witness in his defense—his brother Donald Wright. Donald testified he lived in the same residence as Wright. He was asked whether the drugs found in the house were his, and he invoked his Fifth Amendment right against self-incrimination. The State cross-examined Donald, and then argued that as a result of Donald's testimony, Wright had opened the door regarding prior drug transactions. The trial court agreed, and allowed the State to recall Springman. Springman testified he had purchased cocaine from Wright four to six times in the past six months.

Typically, evidence elicited on cross-examination should not be relied on to open the door to otherwise inadmissible evidence. *See Kien v. State*, 782 N.E.2d 398, 409 (Ind.Ct.App.2003) (a party may inquire into a collateral matter on cross-examination, but "the questioner is bound by the answer received and may not impeach the witness with extrinsic evidence unless the evidence would be independently admissible"), *trans. denied*. However, Wright's attempt to "pin" the cocaine on Donald through Donald's reliance on the Fifth Amendment did open the door, in this instance, to questions about Wright's prior involvement with drugs.

Even if this testimony was otherwise inadmissible, we find its admission harmless error. Webb and Springman, along with the police officers who conducted the surveillance, testified as to the details of the cocaine purchase. Police found $700.00 in marked buy money in Wright's pocket, and cocaine packaged for delivery was found in Wright's residence. Springman's testimony on redirect, even if improper, was essentially cumulative and harmless in light of the evidence the jury had already heard.

### 4. *Sentencing*

Wright was sentenced to thirty years imprisonment on each of the two Class A felony counts and one and one-half years imprisonment on the Class D felony count[5] with the sentences to be served concurrently. The trial court found two aggravating circumstances: 1) a history of uncharged criminal conduct, based on Springman's trial testimony, and 2) the need for corrective rehabilitation that can best be served by commitment to a penal facility. It found two mitigating factors: 1) Wright had no criminal history, and 2) incarceration would cause his dependents undue hardship.

Wright contends he was sentenced incorrectly in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* 542 U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005), *petition for cert. filed*. Prior to the Supreme Court's decision in *Blakely*, we reviewed our trial courts' sentencing decisions for an abuse of discretion. *See, e.g., Bocko v. State*, 769 N.E.2d 658, 667 (Ind. Ct.App.2002), *reh'g denied, trans. denied* 783 N.E.2d 702 (Ind.2002). If a trial court used aggravating or mitigating circumstances to modify the presumptive sentence, all we required the trial court to do was: (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *See id.* However, in *Blakely*, the Supreme Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase a sentence above the presumptive sentence assigned by the legislature. 542 U.S. at 300–02, 124 S.Ct. at 2536.[6]

---

**5.** These are the statutory presumptive sentences for those offenses. A person who commits a Class A felony shall be imprisoned for a fixed term of thirty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Ind.Code § 35–50–2–4. A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half years, with not more than one and one-half years added for aggravating circumstances or not more than one year subtracted for mitigating circumstances. Ind. Code § 35–50–2–7.

**6.** The State argues Wright waived his *Blakely* arguments, as *Blakely* was decided June 24, 2004, and Wright was sentenced on July 1,

In *Smylie*, our Indiana Supreme Court held *Blakely* applies to Indiana's sentencing scheme, and thus requires "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." 823 N.E.2d at 686. However, *Blakely* does not require a jury find every fact used to enhance a sentence beyond the statutory maximum. There are at least four ways such facts may properly be found and used by a court to enhance a sentence. An aggravating circumstance is proper under *Blakely* when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted or stipulated by a defendant; or 4) found by a judge after the defendant consents to judicial fact-finding. *Trusley v. State*, 829 N.E.2d 923, 925 (Ind.2005).

Neither aggravating circumstance the trial court found was proper under *Blakely*. Wright's Pre–Sentence Investigation report showed no criminal history; in fact, the trial court found that to be a mitigating circumstance. The testimony with respect to uncharged criminal conduct was not Wright's; instead, it was testimony Springman presented at the sentencing hearing. Wright's uncharged criminal conduct was therefore an improper aggravator.

The trial court's reliance on Wright's need for corrective rehabilitation best served by commitment to a penal facility was also improper. In *Morgan v. State*, 829 N.E.2d 12 (Ind.2005), the trial court used as an aggravator that prior punishments had failed to rehabilitate Morgan. Our Supreme Court concluded such statements cannot serve as separate aggravating circumstances but instead

"are legitimate observations about the weight to be given to facts appropriately noted by a judge alone under *Blakely*." (*Id.* at 17.) It found Sixth Amendment rights are not implicated when the language of an aggravator is meant to describe the factual circumstances, not to serve as a fact itself.

This is certainly the case with an aggravator such as "failed to rehabilitate" or "failed to deter" where the language used does not refer to a fact. Such observations merely describe the moral or penal weight of actual facts. The Court in *Morgan* determined the purported aggravator that prior punishments had failed to rehabilitate Morgan was not established by the trial court's statement to that effect, but rather by the underlying fact of Morgan's prior convictions. *Id.* Because the use of underlying facts to support an enhanced sentence does not violate the Sixth Amendment requirements of *Blakely* by allowing impermissible independent judicial fact finding, the *Morgan* court held sentences enhanced by aggravators whose language is not specifically found by a jury or admitted by the defendant are not necessarily impermissible so long as the aggravator in question was 1) supported by facts otherwise admitted or found by a jury and 2) meant as a concise description of that the underlying facts demonstrate and therefore relies on a legal determination otherwise reserved as a power of the judge.

In the case before us, there was no such factual basis for the trial court's purported aggravator that Wright was in need of corrective rehabilitation best served by commitment to a penal facility.

2004. We decline the State's invitation to find waiver in Wright's failure to raise such an argument within a week after the *Blakely* decision was issued. *See Smylie*, 823 N.E.2d

at 690 ("We conclude that it is appropriate to be rather liberal in approaching whether an appellant and her lawyer have adequately preserved and raised a *Blakely* issue.")

Accordingly, that aggravating circumstance was improper.[7]

■ We are therefore left with two improper aggravators and two mitigating circumstances. Wright was given presumptive sentences. It would be possible, as in *Mask v. State*, 829 N.E.2d 932, 937 (Ind.2005), to remand to the trial court with instructions to afford the State an election to prove the additional aggravating circumstance to a jury. However, even if the State chooses to prove the aggravating circumstances to a jury and successfully does so, Wright may not be given a harsher sentence.

It is true that, upon resentencing a defendant, a sentencing court cannot "impose a more severe penalty than that originally imposed unless the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence." Ind. Post–Conviction Rule 1(10)(b).

*Hicks v. State*, 729 N.E.2d 144, 146 (Ind. 2000).[8] We accordingly affirm the trial court's imposition of the presumptive sentences, but remand so the trial court may take into account the fact Wright's sentence for dealing in cocaine could have been suspended.

### 5. Ineffective Assistance of Counsel

Wright alleges numerous instances of ineffective assistance of counsel, including counsel's failure to object to the State's addition of another Count of dealing in cocaine, a Class A felony, her failure to keep Wright informed of important matters, and her "inadequate preparation and ignorance of the law." [9] (Br. of Appellant at 32.)

To establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind.2003), *reh'g denied.* First, a defendant must show defense counsel's performance was deficient. *Id.* This requires showing counsel's representation fell below an objective standard of reasonableness and counsel made errors so serious that she was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* The objective standard of reasonableness is based on "prevailing professional norms." *Id.*

Second, a defendant must show the deficient performance prejudiced the defense. *Id.* This requires showing counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.* To establish prejudice, a

---

7. We note the trial court was under the mistaken impression that Wright's sentence for dealing in cocaine as a Class A felony was non-suspendible. Under a 2001 amendment to Ind.Code § 35–50–2–2, a sentence for that offense may be suspended. "When it is apparent that the trial court was under the erroneous conception that the sentence was nonsuspendible, an appellate court will remand for the purpose of such consideration." *Henning v. State*, 477 N.E.2d 547, 553 (Ind. 1985).

8. We are aware this case is not a post-conviction relief case. However, neither was *Hicks.*

9. Wright also complains of his counsel's conduct during sentencing. As we find Wright was properly sentenced to the presumptive term and remand for reconsideration of the suspendability of his sentence, we need not address these allegations of error.

defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

■ On January 24, 2003, Wright was charged with possession of cocaine in an amount of three grams or more with intent to deliver, a Class A felony, and with possession of marijuana, a Class D felony. On September 22, 2003, the State moved to amend the information to add an additional charge, which motion the trial court granted on October 10, 2003. Wright argues his counsel was ineffective for failing to object to the addition of the third charge after the omnibus date.

■ Wright's trial counsel testified she did not object to the additional charge because she believed the trial court would grant the amendment. The State may amend a charge, even in matters of substance, so long as the defendant's substantial rights are not abridged; *i.e.,* so long as the defense has notice and adequate time to prepare. *Prewitt v. State,* 761 N.E.2d 862, 868 (Ind.Ct.App.2002). As Wright was not tried until May 18, 2003, over seven months after the amendment, it is not apparent that Wright's substantial rights were abridged.

■ Wright also argues trial counsel was ineffective for failing to object to evidence about an incomplete *Miranda* warning at trial. A hearing on Wright's Motion to Suppress was held prior to trial. Officer Jarman testified Wright's *Miranda* warnings were incomplete, but Officer Hatfield testified he read the complete *Mi-*

*randa* warnings to Wright before Wright made any statements. The motion to suppress was denied. Counsel's failure to object on the ground of an incomplete *Miranda* warning could not, given Officer Hatfield's testimony at trial, have prejudiced Wright.

Wright also contends trial counsel was ineffective for failing to object to the prosecutor's misconduct. On a number of occasions during the trial the prosecutor, Paul Barada, demeaned Wright's counsel during bench conferences in front of the jury. At one point he stated: "that's the dumbest thing I've ever heard." (Appellant's Supp.App. at 1140.) Trial counsel did not ask that the jury be admonished or for a mistrial. That issue is waived on appeal, but Wright contends the error was fundamental.

■ When reviewing a claim of fundamental error based on prosecutorial misconduct, we employ a two-step analysis: (1) whether the prosecutor engaged in misconduct; and (2) considering all of the circumstances of the case, whether such misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Roberts v. State,* 712 N.E.2d 23, 28–29 (Ind.Ct.App.1999), *trans. denied* 726 N.E.2d 302 (Ind.1999). The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the misconduct. *Id.*

■ We are concerned when a prosecutor feels the need to make childish and offensive comments, even in the heat of battle, but we cannot say Barada's actions placed Wright in a position of grave peril. The evidence against Wright was substantial. The testimony of Webb and Springman, the testimony of the officers who conducted the surveillance and the search, Wright's admission the cocaine was his,

and the presence of the marked buy money in Wright's possession, outweigh the effect the prosecutor's comments could have had on the jury. Because any error was not fundamental, we cannot say trial counsel was ineffective to the extent she did not object to the prosecutor's improper comments.

■ Wright also argues counsel was ineffective for failing to include instructions regarding lesser included offenses. Counsel did not discuss lesser included offense instructions with Wright, and testified she could not remember why she did not tender any such instructions. However, from a review of the transcript, trial counsel's strategy was apparent—she would attempt to prove neither the drugs bought by Webb nor the drugs found in Wright's house belonged to Wright. Donald was called as a witness to buttress this strategy.

■ This "all or nothing" defense is a recognized and accepted strategy. *Autrey v. State*, 700 N.E.2d 1140, 1141–42 (Ind. 1998). Counsel's strategic and tactical decisions are not subject to attack as ineffective assistance of counsel, unless the strategy is so deficient that it falls outside the objective standard of reasonableness. *Id.* We further note this is a strategic decision counsel may undertake without the defendant's consent. *Id.*

The evidence presented in this case could have led to at least two conclusions: 1) Wright possessed the illegal drugs and was involved in selling them, or 2) Springman was the dealer and the drugs in Wright's house belonged to Donald. In neither instance would lesser-included offense instructions have been proper. We find no likelihood the inclusion of lesser-included offense instructions would have raised a reasonable doubt as to Wright's culpability. *See Smith v. State*, 792 N.E.2d 940, 946 (Ind.Ct.App.2003), *trans.*

*denied* 804 N.E.2d 755 (Ind.2003). Accordingly, counsel was not ineffective for failing to request lesser included offense instructions.

Affirmed in part and remanded in part.

KIRSCH, C.J., and ROBB, J., concur.