**Willie McCAIN Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A02–1009–CR–985.

Court of Appeals of Indiana.

May 23, 2011.

Transfer Denied Aug. 18, 2011.

David M. Payne, Ryan & Payne, Marion, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Willie McCain Jr. appeals his conviction for Class B felony dealing in cocaine. McCain was accused of selling cocaine to a confidential informant. The informant avoided drug charges of her own in exchange for her participation in this case. At trial, McCain sought to elicit the potential sentence avoided by the informant for her cooperation. The trial court precluded discussion of any specific sentence that the informant might have faced had she been convicted on her non-filed drug charges. In addition, the confidential informant had a prior theft conviction which was vacated pursuant to an agreed order shortly before McCain's trial. McCain sought to elicit and argue that the conviction was set aside to sweeten the informant's deal and to "clean up" her criminal background before she testified. The trial court prohibited any such discussion as unsubstantiated, potentially misleading, and unfairly prejudicial. We conclude that the trial court's rulings were erroneous and violated McCain's right to cross-examination, but we find the errors harmless beyond a reasonable doubt. We affirm the trial court's judgment of conviction.

### Facts and Procedural History

Tabitha McGuinn dealt cocaine, and in June 2008, members of the Grant County drug task force informed her that she faced potential dealing charges. To avoid prosecution, McGuinn agreed to participate as a confidential informant in several controlled buys of narcotics. She executed a written agreement with the State which provided as follows:

In consideration for my performance as a "Confidential Informant", I understand that the following arrangements have been made for me on behalf of the State of Indiana:

I understand that the State of Indiana has agreed to modify my sentence. I understand that I will be able to abide under this sentence modification as long

as I assist the J.E.A.N. Team Drug Task Force as agreed. I understand that "Assistance" with the J.E.A.N. Team Drug Task Force on behalf shall be defined as follows:

Make two felony controlled narcotic purchases from four different subjects, totalling eight purchases in all. Four of the eight must be B-felony or higher status

\* \* \* \* \* \*

My current status is listed below:

Count 1: Dealing cocaine under 3 grams within 1000 ft of a school 35–48–4–1

Count 2: Dealing cocaine under 3 grams within 1000 ft of a family housing complex

The modification in my current case status is as follows:

Counts 1 and 2 will be dismissed if the agreement is completely fulfilled

State's Ex. 4.

On July 11, 2008, McGuinn contacted authorities indicating that she would be able to make a purchase of cocaine from McCain. McGuinn met officers Mike Spaulding, Erin Keppeler, and Marland Sands in a church parking lot. Deputy Keppeler searched McGuinn's clothing, undergarments, ears, mouth, nose and vaginal area. Deputy Sands searched McGuinn's vehicle. Neither found any contraband. Detective Spaulding outfitted McGuinn with a video recording device and gave her fifty dollars in buy money. McGuinn then drove to the Courtesy Economy Hotel where McCain lived. The officers followed and surveilled her. McGuinn met McCain in the hotel parking lot and accompanied him to his room. Inside, McCain manipulated powder cocaine with a knife into a smoking device. He asked McGuinn to smoke with him, and McGuinn complied. At some point McCain apparently gave McGuinn a small packet. McGuinn gave McCain the fifty dollars. McGuinn and McCain's interaction was captured on video. McGuinn left the hotel room and drove back to the church. She reconvened with the police officers and gave them the packet she purportedly received from McCain. Analysts later determined that the packet contained cocaine.

The State charged McCain with Class B felony dealing in cocaine, Ind.Code § 35–48–4–1(a)(1).

During discovery, the defense learned that McGuinn was convicted in 2005 of misdemeanor theft, but that her conviction was vacated in April 2010 pursuant to an agreed order granting post-conviction relief. According to McGuinn, her defense attorney, and the deputy prosecutor involved in that case, the conviction was set aside to help McGuinn secure employment and its vacatur was not related to McGuinn's confidential informant agreement. McGuinn's attorney and the deputy prosecutor claimed to have been unaware that McGuinn was acting as an informant in the present cause.

McCain's case proceeded to trial in July 2010. Officers Spaulding, Keppeler and Sands appeared on behalf of the State. McGuinn testified to the course of the drug deal. McGuinn stated that she gave McCain fifty dollars and that he gave her cocaine in return. The State introduced the video recording of their transaction. The State also introduced McGuinn's written confidential informant agreement.

McCain sought to elicit the sentence McGuinn could have received if convicted on her non-filed drug charges. McCain wished to show the potential prison time that McGuinn avoided by cooperating with the State, which in turn suggested her motives to be untruthful with authorities

and when testifying against McCain. The trial court prohibited McCain from discussing any specific sentence length McGuinn could have faced. The court reasoned that "[s]entencing is the province of the Court alone and not the province of the jury. My concern with indicating to the jury that Dealing in Cocaine is a Class A felony and carries with it that sentencing range, they could then start to think, 'Oh, how many years is this defendant facing?'" Tr. p. 214. The court would allow McCain to indicate, however, that McGuinn faced a "very substantial amount of time in jail." *Id.* at 215.

McCain also sought to discuss and introduce documentary evidence of McGuinn's vacated theft conviction. The documentary evidence included a chronological case summary of the original theft case, McGuinn's motion for post-conviction relief, the agreed order granting post-conviction-relief, and a chronological case summary of McGuinn's post-conviction proceedings. McCain posited that the State set aside McGuinn's conviction to sweeten her confidential informant agreement. McCain also believed the State vacated the conviction to clean up McGuinn's criminal record and make it more difficult to impeach with prior convictions. The trial court ruled that the defense could cross-examine McGuinn "regarding any actual bias she may have in favor of the State due to the pending Theft charge and the recent benefit she received pursuant to the Agreed Motion for Post Conviction Relief." Appellant's App. p. 106. But the court found, based on the evidence presented, that "there was no 'deal' related to this Cause, and no attempt by the State to 'clean up its witness.' Any implication or presentation of this argument by the Defendant would be in bad faith, misleading to the jury, and is likely to cause unfair prejudice. Therefore, the Defendant's cross-examination of the confidential infor-

mant shall not include these inappropriate accusations." *Id.* at 107.

The defense cross-examined McGuinn in relevant part:

Q. So you were facing some very serious charges.

A. Correct.

Q. Did you feel somewhat desperate to get out of trouble if you possibly could?

A. That was my option. Yes.

Q. And jail didn't look like an attractive option. Did it?

A. Correct.

Q. So you were ready to do whatever was needed to try and get yourself out of trouble. Would that be a fair statement?

A. Correct.

　　*　　*　　*　　*　　*　　*

Q. And you were convicted of theft, were you not, at one point?

A. Correct.

　　*　　*　　*　　*　　*　　*

Q. Was that conviction set aside recently?

A. Yes.

　　*　　*　　*　　*　　*　　*

Q. Alright. Do you understand that charge is now pending? Did they tell you that? Did anyone tell you that?

A. No.

Q. Do you understand that you now face going to trial on that charge if the State were to choose to proceed with it?

　　*　　*　　*　　*　　*　　*

Q. Do you feel that you have any bias in favor of the State due to the pending theft charge?

A. No.

Q. Do you feel that the setting aside of that conviction was a recent benefit you received pursuant to an agreement?

A. No. . . .

Tr. p. 169–82. McCain also elicited from Deputy Sands that McGuinn's non-filed charges were Class A felonies, "the most serious crime[s] we've got." *Id.* at 107–08.

McCain testified in his defense and admitted to meeting McGuinn in his hotel room on the day in question. He admitted that he brought cocaine and smoked it with McGuinn. McCain maintained, however, that he did not sell the drugs to her and that they only smoked together. McCain also said that he accepted the fifty dollars as repayment for a previous, unrelated loan.

McCain was found guilty as charged. He appeals.

### Discussion and Decision

McCain claims that the trial court erred (a) by excluding evidence of the sentence McGuinn could have received if convicted on her non-filed drug charges and (b) by precluding suggestion that McGuinn's prior theft conviction was vacated to sweeten her deal with the State and to "clean her up" as a witness.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Sixth Amendment right to confrontation is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article 1, Section 13 of the Indiana Constitution similarly provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face." Both the Sixth Amendment and Article 1, Section 13 guarantee the right to cross-examine witnesses. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *McCarthy v. State,* 749 N.E.2d 528, 533 (Ind.2001).

The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally-protected right of cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also* Ind. Evidence Rules 607 ("The credibility of a witness may be attacked by any party . . ."), 616 ("For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible.").

Accordingly, "[a] defendant in a criminal case is entitled to apprise the jury of the existence of any agreement between the prosecution and its witness." 13 Robert Lowell Miller, Jr., *Indiana Practice: Indiana Evidence* § 616.102 (3d ed.2007). As our Supreme Court has explained:

An accomplice who turns "state's evidence" and agrees to "cooperate" with the State in consideration of leniency or the dismissal of charges by the State, to be realistic, is being bribed, regardless of the fact that public policy has approved such action in the interest of effective law enforcement. It does not necessarily follow that because of inducements offered to the accomplice his testimony is false. It is, however, highly suspect. Because of the pressure of such undue influence upon the witness in such cases the jury should have the evidence relating thereto. Such type of influence naturally impairs the credibility of such a witness.

*Newman v. State,* 263 Ind. 569, 334 N.E.2d 684, 686–87 (1975).

■ It is equally well-settled that the defendant is entitled to elicit the specific penalties a witness may have avoided through her agreement with the State:

> [S]ignificant harm results when the jury is prevented from learning the extent of benefit received by a witness in exchange for his testimony. It would be obviously relevant and proper for a jury to consider the amount of compensation a witness expects to receive for his testimony. It is equally proper for this jury to know the quantity of benefit to accusing witnesses. It is quite relevant whether they are thereby avoiding imprisonment of ten days, ten weeks, or ten years.

*Jarrett v. State*, 498 N.E.2d 967, 968–69 (Ind.1986) (citations omitted); *accord McCorker v. State*, 797 N.E.2d 257, 266 (Ind.2003); *Standifer v. State*, 718 N.E.2d 1107, 1110 (Ind.1999); *Bullock v. State*, 903 N.E.2d 156, 159–60 (Ind.Ct.App.2009); *Wright v. State*, 836 N.E.2d 283, 289–290 (Ind.Ct.App.2005), *reh'g granted with instructions, trans. denied; Jones v. State*, 749 N.E.2d 575, 580 (Ind.Ct.App.2001), *trans. denied; Sigler v. State*, 733 N.E.2d 509, 511 (Ind.Ct.App.2000), *reh'g denied; Bell v. State*, 655 N.E.2d 129, 132–33 (Ind. Ct.App.1995); *Hamner v. State*, 553 N.E.2d 201, 203 (Ind.Ct.App.1990); *Janner v. State*, 521 N.E.2d 709, 715 (Ind.Ct. App.1988); *Samuels v. State*, 505 N.E.2d 120, 123 (Ind.Ct.App.1987).

■ Here we conclude that the trial court erred in imposing its restrictions on McCain's cross-examination. McCain was permitted to ask McGuinn whether she faced a "very substantial amount of time in jail" and dodged "some very serious charges" in exchange for her participation as a confidential informant, but the trial court prohibited any discussion of the sentences McGuinn might have received if convicted of her suspected drug offenses. In line with *Jarrett*, we find that the trial court erroneously precluded inquiry into the potential punishment McGuinn avoided by cooperating with the State.

We further conclude that the trial court erred by limiting discussion of McGuinn's theft conviction and the possibility that it was set aside as additional consideration for McGuinn's participation as an informant. Given the contemporaneity of the vacatur and McCain's trial, as well as the vague grounds on which the theft conviction was set aside, we believe it was within the province of the factfinder to decide whether the vacatur of McGuinn's conviction was intended to sweeten her agreement with the State.

■ Nevertheless, a denial of the right to cross-examine is subject to harmless error analysis. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431; *McCarthy*, 749 N.E.2d at 534. We will not reverse the defendant's conviction if the State can show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Sigler*, 733 N.E.2d at 511. Whether the trial court's error was harmless depends upon several factors including the importance of the witness's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. *Jones*, 749 N.E.2d at 580.

■ We conclude that the trial court's erroneous restrictions on McCain's cross-examination were harmless in this case. Deputies Keppeler and Sands searched McGuinn's person and vehicle before the subject transaction. They found no contraband. McCain admitted to bringing the cocaine to the meeting and to furnishing

McGuinn with cocaine to smoke with him. The interaction was captured on video and played for the jury. Police received from McGuinn a packet containing cocaine after the meeting. There was thus ample independent evidence corroborating McGuinn's testimony that McCain delivered cocaine to her. Moreover, while McCain was prohibited from mentioning any specific sentence that McGuinn avoided through her cooperation with the State, he was able to question her to a certain extent on her confidential informant agreement and her potential motives to lie. He confirmed that McGuinn faced some "very serious charges" and was "ready to do whatever was needed to try and get [her]self out of trouble." McGuinn's written confidential informant agreement was offered into evidence. And McCain elicited from Deputy Sands that McGuinn's non-filed charges were Class A felonies, "the most serious crime[s] we've got." With regard to McGuinn's theft conviction, the trial court allowed McCain to ask McGuinn if it was recently vacated and whether as a result of its vacatur McGuinn might be biased in favor of the State. Furthermore, McCain actually made his desired insinuation by asking McGuinn, "Do you feel that the setting aside of that conviction was a recent benefit you received pursuant to an agreement?" McCain thus intimated, in violation of the trial court's ruling, that the vacatur of McGuinn's conviction was consideration for her cooperation as an informant. Finally, we note that the documentary evidence of McGuinn's conviction that McCain wished to introduce was largely cumulative of what McGuinn admitted while on the stand—i.e., that she was once convicted of the theft but that the conviction was recently set aside. In light of the foregoing—namely the strength of the State's case and minimal curtailment of McCain's cross-examination—we conclude that the errors complained of were harmless beyond a reasonable doubt and do not compel reversal. *See, e.g., Bullock,* 903 N.E.2d at 160 ("It is true that Hornberger was important to the State's investigation. . . . However, Hornberger's testimony cannot be described as the 'linchpin' of the State's case, as it was merely cumulative as to the essential elements of the State's case. While the jury did not hear the potential penalty Hornberger could have received, it was not in the dark about Hornberger's motive to testify. The jury learned that Hornberger, in exchange for his testimony, was convicted of one misdemeanor instead of two felonies and was permitted to serve his sentence on probation. Therefore, we conclude the probable impact on the jury was minor, and the error was harmless."); *Wright,* 836 N.E.2d at 290 ("Springman was not the only witness who testified against Wright. Webb, the purchaser of the cocaine, testified, as did the police officers who conducted the visual and audio surveillance. The officers found in Wright's possession the marked buy money and additional cocaine packaged for sale. In light of the evidence presented, we find harmless the trial court's error in failing to allow a full cross-examination of Springman.").

We affirm the trial court's judgment of conviction.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.