## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2018, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald K. Smith
Delaware County Public Defender
Agency
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Henry Cook,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 26, 2018

Court of Appeals Case No.
18A-CR-547

Appeal from the Delaware Circuit
Court

The Honorable Marianne L.
Vorhees, Judge

Trial Court Cause No.
18C01-1601-F3-1

**Najam, Judge.**

# Statement of the Case

William Henry Cook appeals his conviction following a jury trial for robbery, as a Level 3 felony. He presents three issues for our review:

1. Whether the trial court erred under the Fifth Amendment to the United States Constitution when it admitted into evidence statements he made to police.

2. Whether the trial court erred under Article 1, Section 11 of the Indiana Constitution when it admitted into evidence items gathered as a result of a search of Cook's apartment.

3. Whether the trial court erred under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution when it did not allow Cook to cross-examine the victim about the victim's pending criminal charge.

We affirm.

# Facts and Procedural History

Late at night on December 26, 2015, J.S. left a friend's house to walk to a gas station in order to buy a drink and a candy bar. As J.S. was walking back to his friend's house, Cook, who knew J.S., stopped his vehicle and asked J.S. if he needed a ride. Another individual, Benjamin Skinner, was also in the vehicle with Cook when Cook offered J.S. a ride. After Cook pulled over, he told J.S. that he and Skinner were going to go to "a guy's house" to pick up some pills and cocaine. Tr. Vol. II at 49. J.S. got into the car with Cook and Skinner.

[4]     When they arrived at the house, everyone exited the vehicle. Skinner returned to the car, and Cook and J.S. started walking toward the house. Cook bent down to tie his shoes but J.S. kept walking. Cook then caught up to J.S. and started hitting J.S. in the back of the head. At that point, Skinner exited the car, came up to J.S., and held a shotgun to J.S.'s stomach. Skinner told J.S. that, if he tried to get away, "they're going to kill [J.S.]." *Id.* at 51. Cook kept hitting J.S. with brass knuckles, and he later hit J.S. with the butt of a revolver. At one point, J.S. fell to the ground, and Skinner hit him in the ribs and side and kicked him. Cook kept hitting J.S. and kept repeating: "I'm going to kill you. You stole weed from my sister. You're going to pay for this." *Id.* at 53. After Cook and Skinner stopped beating J.S., they stripped him of all of his clothes and left him naked. They also took his cell phone and money from him. Cook and Skinner then returned to Cook's apartment, which he shared with his sister.

[5]     Once Cook and Skinner left, J.S. ran through a wooded area to the closest house. J.S. stopped at the house and used their phone to call the police. The police arrived, and J.S. was taken to the hospital where he was given pain medication and treated for a concussion and bruised ribs. After J.S. was released from the hospital in the early morning hours of December 27, he went to the Delaware County Sheriff's Office ("DCSO") for questioning. J.S. informed officers that Cook and Skinner had beaten him. He also told officers where Cook resided. After J.S. gave his report, officers went to Cook's apartment and arrested Cook.

[6] Officers transported Cook to the DCSO, where Detective Kurt Walthour questioned him. Detective Walthour advised Cook of his *Miranda* rights. Cook acknowledged that he understood his rights, and he signed a waiver of rights form. Cook then told Detective Walthour that he had gotten into a fight with J.S. and that he had taken J.S.'s clothes, shoes, phone, and money. At the end of the interview, Detective Walthour asked Cook if officers could search Cook's apartment and advised Cook of his rights. Cook acknowledged that he understood his rights and signed a consent form to allow officers to search his apartment.

[7] Meanwhile, officers at Cook's apartment obtained the consent of Cook's sister to search the premises. Upon searching the apartment, officers found J.S.'s pants with money in the pocket and a shotgun in one bedroom. Officers also found J.S.'s cell phone in another bedroom and J.S.'s sweatshirt, socks, and one shoe under the vanity in the bathroom.

[8] The State charged Cook with one count of robbery, as a Level 3 felony; one count of battery, as a Level 6 felony; and one count of theft, as a Level 6 felony.[1] Prior to trial, Cook filed a motion to suppress evidence in which he alleged that his statements to police were inadmissible because he did not make a knowing and intelligent waiver of his right to remain silent. He also alleged in that motion that the items found during the search of the apartment were

---

[1] The State later dismissed the charge for theft.

inadmissible as evidence because he had not knowingly and voluntarily consented to the search of the apartment. The trial court denied that motion after a hearing. Also prior to trial, the State filed a motion in limine in which it sought to prevent Cook from questioning J.S. about a pending criminal charge against J.S.[2] The trial court held a hearing on the motion but deferred ruling on the motion until trial.

[9] The court held a jury trial on January 22 and 23, 2018. During the trial, the State presented as evidence the testimony of Detective Walthour and one of the officers who searched Cook's apartment. The State also called J.S. as a witness. Outside the presence of the jury, Cook questioned J.S. on his prior criminal history. J.S. testified that he had a pending case against him in another county for attempted sexual misconduct with a minor. J.S. also testified that he had entered into a plea agreement with the State on that charge, but that the trial court had not accepted the agreement. He further testified that he had received no benefit in the sexual misconduct case for testifying against Cook in the present case, that he did not believe he would receive a benefit for testifying in the present case, and that no promises were made to him in exchange for his

---

[2] J.S. also has a prior conviction for conversion. The parties all agreed that Cook could cross-examine J.S. regarding that conviction.

testimony against Cook. The trial court ruled that Cook could not cross-examine J.S. about the pending case in front of the jury.[3]

At the conclusion of the trial, the jury found Cook guilty of robbery, as a Level 3 felony, and battery, as a Class A misdemeanor. The trial court entered judgment of conviction on both counts, but later vacated Cook's conviction for battery. The court then sentenced Cook to nine years in the Indiana Department of Correction. This appeal ensued.

# Discussion and Decision

## Issue One: Admission of Statements

Cook first contends that the trial court violated "his right against self-incrimination" when it admitted into evidence statements he made to law enforcement. Appellant's Br. at 8. But Cook has not provided cogent reasoning to support his contention as required by the appellate rules. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning.").

"We demand cogent argument supported with adequate citation to authority because it promotes impartiality in the appellate tribunal. A court which must search the record and make up its own arguments because a party has not

---

[3] After the trial court sustained the State's motion in limine, Cook made an offer of proof and stated that, if he were allowed to question J.S. regarding the charged crime, he would ask whether J.S. had been charged with attempted sexual misconduct with a minor.

adequately presented them runs the risk of becoming an advocate rather than an adjudicator." *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997). "A brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues. On review, we will not search the record to find a basis for a party's argument[.]" *Id.*

[13] Here, Cook simply states "that the Court erred in finding that he had been properly advised of his rights, or that he made a knowing and intelligent waiver of his rights." Appellant's Br. at 8. Cook does not present any argument as to how he was not properly advised of his rights or why his waiver was not knowing or intelligent. We will not search the record to find a basis for his argument. *See Young*, 685 N.E.2d at 151. Thus, Cook has waived this issue.

### Issue Two: Admission of Evidence Found in Cook's Apartment

[14] Cook next contends that the trial court violated his "Article 1, Section 11" rights when it admitted into evidence items obtained as a result of the search of his apartment. But, again, Cook has not provided cogent reasoning to support his contention. Cook simply states, without more, that "the procedures followed by the police" in the search of his apartment "did not comply with the grounds of *Pirtle* [*v. State*, 323 N.E.2d 634 (Ind. 1975)]." Appellant's Br. at 9. Cook further "submits that any search in the premises and any evidence obtained therefrom was unreasonable under the tests employed under Article 1, Section 11 of the Indiana Constitution." *Id.* Cook does not attempt to explain how his consent following a *Pirtle* advisement was inadequate or why his consent was needed in light of the fact that his sister, with whom he shared the

apartment, had given her consent for officers to search the apartment. *See Peel v. State*, 868 N.E.2d 569, 575 (Ind. Ct. App. 2007) ("A valid consent to search may be given by the person whose property is to be searched or a third party who has common authority or an adequate relationship to the premises to be searched.") Further, Cook does not attempt to explain how the procedures followed by the police in searching his apartment violated his constitutional rights or otherwise explain how the search of his apartment was unreasonable. And, again, we will not make his argument for him. Thus, this issue is also waived.

### Issue Three: Cross-Examination of J.S.

[15] Finally, Cook contends that the trial court violated his right to confront a witness against him under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution when it did not allow Cook to cross-examine J.S. regarding a pending criminal charge against J.S. As the Indiana Supreme Court has stated:

> Generally, a trial court's ruling on the admission of evidence is accorded "a great deal of deference" on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995). "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion" and only reverse "if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind.2013)).

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015).  But where, as here, "'a constitutional violation is alleged, the proper standard of appellate review is *de novo*.'"  *Id.* (quoting *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013)).

[16]     It is well settled that

> [t]he Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Sixth Amendment right to confrontation is made applicable to the states by the Due Process Clause of the Fourteenth Amendment.  *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).  Article 1, Section 13 of the Indiana Constitution similarly provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face."  Both the Sixth Amendment and Article 1, Section 13 guarantee the right to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *McCarthy v. State*, 749 N.E.2d 528, 533 (Ind.2001).

*McCain v. State*, 948 N.E.2d 1202, 1206 (Ind. Ct. App. 2011).  But the right to cross examine witnesses "is subject to reasonable limitations placed at the discretion of the trial judge."  *Smith v. State*, 721 N.E.2d 213, 219 (Ind. 1999).

[17]     Cook specifically contends that he was denied the opportunity to cross-examine J.S. when the trial court prohibited him from questioning J.S. about the pending criminal charge because J.S.'s testimony about that charge would have been impeaching.  However, it is well settled that "it is not proper to impeach by evidence of charged crimes not reduced to conviction."  *Id*.  Here, J.S. had entered into a plea agreement with the State regarding the pending criminal

case, but, at the time of Cook's trial, the trial court had not accepted J.S.'s guilty plea. Accordingly, J.S.'s charge for sexual misconduct with a minor had not yet been reduced to a conviction. Because the charged crime had not been reduced to a conviction, Cook could not use that charge to impeach J.S.

[18] Cook also contends that J.S.'s testimony regarding the charged offense would show that J.S. had a "bias, prejudice[,] or ulterior motive" to testify against Cook. Appellant's Br. at 11. "The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally-protected right of cross examination." *McCain*, 948 N.E.2d at 1206 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). However, there is nothing in the present case to indicate that J.S. had any motivation to testify against Cook.

[19] Indeed, during the hearing outside the presence of the jury on the State's motion in limine, J.S. testified that the State did not offer him anything in exchange for his testimony in the present case, that the prosecuting attorney did not offer to make any calls to help J.S. in the pending criminal case, and that he did not believe he would receive any benefit in the pending case in exchange for his testimony against Cook. While "pending charges that are the basis of an arrangement with the witness are a proper subject of cross examination," *Tolliver v. State*, 922 N.E.2d 1272, 1286 (Ind. Ct. App. 2010), there is no evidence of any arrangement between J.S. and the State. Accordingly, Cook's challenge to the trial court's limitation of his cross-examination of J.S. is without merit. *See id*.

In sum, Cook could not use a pending charge not reduced to a conviction to impeach J.S. And J.S. did not have an "ulterior motive" to testify against Cook because the State did not offer any benefit to J.S. in his pending criminal charge in exchange for his testimony against Cook. Accordingly, the trial court did not violate Cook's right to cross-examine a witness against him when it prohibited Cook from questioning J.S. about the pending criminal charge. We affirm Cook's conviction.

Affirmed.

Crone, J., and Pyle, J., concur.