Omond J. SMITH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 48S00–9807–CR–414.

Supreme Court of Indiana.

Dec. 21, 1999.

Montague M. Oliver, Jr., Anderson, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Omond J. Smith was convicted of the murder of Steven David Riggs and carrying a handgun without a license as a Class C felony, and was found to be a habitual offender. He was sentenced to 103 years imprisonment. In this direct appeal, he contends that the trial court erred by (1) admitting portions of Smith's taped interview with the police which contained inadmissible hearsay, references to Smith's prior bad acts, and a lay witness' testimony of guilt; (2) admitting hearsay testimony of two witnesses; and (3) restricting cross-examination of two other witnesses designed to explore bias based on their pending criminal charges. We reverse and remand to the trial court.

## Factual and Procedural Background

Early on the morning of January 11, 1997, Anderson police received a phone report of a man lying in the middle of the street. After finding Riggs' body, police began looking into known drug houses in the area and identified Smith's nearby home. Shell casings found at the scene of the crime matched casings found in the front and back yards of Smith's house. Later, the police received a tip that Tommy Lampley had witnessed the crime.

Smith was arrested and found guilty of murder in a jury trial. Lampley was the State's principal witness, and gave the following account. The day before Riggs' body was found, Smith and Lampley had gone to Smith's house where Riggs was waiting. Smith suspected Riggs of having stolen Smith's drugs. After Smith unsuccessfully searched the house for the drugs, he patted Riggs down and found a bag of marijuana or cocaine. Riggs and Smith then began an argument that spilled outside and resulted in Riggs' fleeing on foot. Smith pursued in a truck and shot Riggs four times, twice in the head.

Several witnesses placed Smith and Lampley with a gun around the night of the murder. Smith did not testify at trial, but before trial had given two conflicting versions of Riggs' death. First, in a letter received by the prosecutor's office on February 20, 1997, Smith claimed that Lampley had killed Riggs after the two of them got into a fight. According to Smith, because Lampley was too drunk to fight back, Lampley shot Riggs. On June 10, almost four months after the letter was received, Smith was interviewed by Detective Sollars of the Anderson Police Department. In that interview, Smith again claimed that Lampley had killed Riggs, but stated that Lampley had sold Riggs fake drugs. In this version, after Riggs found out the drugs were fake, he demanded his money back from Lampley and an argument ensued that resulted in the shooting.

## I. Admissibility of Smith's Police Interview

After a lengthy conference at which portions of the interview were held inadmissi-

ble, an edited version of the videotape of Detective Sollars' interview with Smith was admitted. Smith objected to several of the admitted portions of the tape including statements by Sollars. He contests three of these rulings in this appeal.

### A. *Hearsay Opinions of Smith's Guilt*

Smith contends that three of Sollars' statements in the tape asserted Smith's guilt in the current crime and constituted inadmissible hearsay. Specifically, in the first two challenged statements Sollars stated, "half of the people at the jail's [sic] called me wanting to tell me that you did it," and "[Lampley] said you did it because it was over him [Riggs] ripping you off your dope, your stash." Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). A statement is not hearsay if it is not used to prove the truth of the matter asserted. *See Grund v. State*, 671 N.E.2d 411, 415 (Ind.1996); *see also Bufkin v. State*, 700 N.E.2d 1147, 1150 (Ind.1998). The State relies on the doctrine that police questions and comments in an interview may be designed to elicit responses from the defendant and if so, are "not offered as proof of the facts asserted therein." *Strong v. State*, 538 N.E.2d 924, 928 (Ind.1989).

In *Strong*, the trial court admitted a tape recording of the defendant's statements to police. The defense objected on hearsay grounds to statements of the interviewing officer, including the following: "I want to caution you on one thing. Physical evidence proof, stuff that Lt. Loy saw and found at your house on that night ... [d]oesn't match stuff that you tell us...." *Id.* This Court held that there was no error in admitting the statements because they were not offered for the truth of the matters asserted and because the trial court gave a lengthy admonishment to the jury. *See id.*

In this case, neither Smith nor the State requested a limiting instruction or admonishment that Sollars' statements were not to be used for the truth of the matters asserted and none was given. Although a trial court has no affirmative duty to consider giving an admonishment absent a party's request to do so, *see Humphrey v. State*, 680 N.E.2d 836, 839–40 (Ind.1997), the lack of an admonishment in this case combined with the fact that the statements appear to be assertions of fact by the detective, not mere questions, renders their admission error.

Smith also objected to the admission of another portion of the interview in which Sollars and Smith discussed Smith's reputation:

Q: Well, you know, if we ... anybody we brought in here who would say in your gut who do you think might have done this ...

A: Um–Hum. They would probably said me.

Q: Omond. How does it feel to be, have that kind of reputation? Everybody wants you.

A: Everybody! That's messing me up. Here it is obvious that Sollars' utterances were not assertions of fact, but more in the nature of statements designed to elicit a response. Even without an admonishment, Sollars' statements and questions were admissible because they were similar to the comments and questions made in *Strong* and were designed to elicit a response from Smith, not to be accepted for the truth of the matters asserted. To the extent the objection was to Smith's responses, these were admissible under Indiana Evidence Rule 801(d)(2)(A), which exempts statements by a party-opponent from the definition of hearsay.

### B. *Smith's Prior Criminal History*

Second, Smith argues that the trial court erred by admitting Smith's own statement that he had a criminal record and had sold drugs. The State sought to admit this evidence pursuant to Indiana

Evidence Rule 404(b). To be admissible under that Rule, the evidence must be relevant to some matter other than the defendant's propensity to commit crimes and the prejudicial effect of the evidence must not substantially outweigh its probative value pursuant to Indiana Evidence Rule 403. *See Thompson v. State,* 690 N.E.2d 224, 233 (Ind.1997).

■ Smith contests the admissibility of two separate statements:

You can look at my record. It'll probably stretch from here to here, you know what I'm saying, because I didn't have anything, you know ...

You know, I did, I made a mistake selling drugs you know, but I feel like I was doing it for the right reason to get what I needed....

....

I know people who want me bad 'cause of my past crimes.

The State claims that evidence of Smith's drug dealing bears on his motive to murder Riggs, who had stolen his drugs. However, two of Smith's three references to his past criminal record did not specify what other crimes he had committed. They therefore do not bear on the motive on which the State relies for its claim of relevance, and their admission under Rule 404(b) was error.

The only statement that referred to Smith's dealing was: "I made a mistake by selling drugs...." This may show that Smith had at one time been a drug dealer, but it did not show that he was dealing at the time of the murder. Its relevance was thus doubtful at best, and given its obvious prejudicial nature, its admission was dubious at best.

### C. *Police Officer's Opinion of Smith's Guilt*

■ Finally, Smith contends that the trial court erred in admitting the portion of his police interview where Sollars stated, "I thought it was you." Indiana Evidence Rule 704(b) states that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case...." The State argues, without citation to any supporting authority, that the statement was admissible because it was not testimony in court.[1] The Court of Appeals has applied Rule 704(b) to psychological reports that are not in-court testimony. *See Griffin v. State,* 692 N.E.2d 468, 472 (Ind.Ct.App.1998), *reh'g granted,* 694 N.E.2d 304 (Ind.Ct.App.1998), *vacated in part on other grounds by* 717 N.E.2d 73 (Ind.1999). The same reasoning underlying Rule 704(b)'s prohibition of opinions of guilt during live in-court testimony applies to statements offered at trial that were made at another time or place. This admission too was error.

### II. Hearsay

Smith alleges that the trial court erred by admitting statements of two witnesses in which they reported statements made by Riggs shortly before his murder. As stated earlier, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Ind. Evidence Rule 801(c), and is inadmissible unless it falls under an exception created by law or the Indiana Rules of Evidence, *see* Evid. R. 802.

### A. *Herb's Testimony*

■ First, Smith objects to the testimony of Julie Herb, Riggs' girlfriend, that on the day of the murder, Riggs told her he needed money to pay his dealer for drugs he had taken earlier in the day. The State claims that Herb's statement was admissible under Indiana Evidence

---

1. The State also argues, citing *Strong,* 538 N.E.2d at 928, that the statement was not an opinion of guilt because Sollars made the statement to elicit a reaction from Smith.

Given the discussion in Part I.A, including the lack of an admonishment, it is clear that the jury would assume Sollars was offering an opinion regarding Smith's guilt.

Rule 803(3) to prove Riggs' state of mind. However, the State fails to identify any issue in the case that turned on Riggs' state of mind. In addition to the requirement that hearsay fall within an exception to be admissible, the Rules of Evidence also mandate that only relevant evidence is admissible. *See* Evid. R. 402; *see also Willey v. State*, 712 N.E.2d 434, 444 (Ind. 1999). Although a "victim's state of mind is relevant where it has been put in issue by the defendant," *Angleton v. State*, 686 N.E.2d 803, 809 (Ind.1997), that is not the case here. The majority of Herb's testimony related to what Riggs said he had done earlier in the day, including taking drugs from a dealer and failing to pay for them. As such its relevance, if any, turned on the truth of the matters reported, and its admission was error.

### B. *Jackson's Testimony*

Next, Smith objects to the testimony of Harrison Jackson, the owner of a local store, that around December 28 Riggs gave Jackson his wallet as collateral for a loan of twenty dollars saying he needed money to fix his car. The State argues that Jackson's statement was not admitted to show the truth of the matters asserted—that the car was not working and Riggs needed money to fix it—but to show that Riggs did not have money around the time of the murder. The State claims that this is relevant to rebut Smith's second version of the murder in which Lampley killed Riggs to rob him of a few hundred dollars. The State contended at trial that it was unlikely that Lampley "robbed a crack head who doesn't have any money."

 Statements may be admitted to prove identity, motive, etc. *See Levi v. State*, 627 N.E.2d 1345, 1349 (Ind.Ct.App.

1994); *see also United States v. Portalla*, 985 F.2d 621, 623 (1st Cir.1993) ("Marino is wrong about calling the evidence 'hearsay,' for the statements spoken at the other end of the phone were not admitted for their truth, but to prove that Marino was the speaker."). However, if to establish a collateral issue the statements must first prove the truth of the matter asserted, it remains hearsay. *See* 13 Robert L. Miller, Jr., *Indiana Practice* § 801.302 at 493–97 (2d ed.1995). The truth of the proposition that Riggs needed money is central to the claimed purpose of the evidence, namely to show that the robbery of an impecunious person was improbable. Accordingly, it was hearsay and its admission was error, if harmless.[2]

### III. Right to Confront Witnesses

Finally, Smith contends that the trial court erred by refusing to allow Smith to cross-examine two witnesses concerning pending criminal charges against them because these charges "gave [the witnesses] a motive to testify as the prosecution desired in an effort to curry favor and gain favorable treatment." Two of the witnesses against Smith, Jana Brandle and Tommy Lampley, had criminal charges pending at the time of Smith's trial. Brandle was charged with operating a vehicle while intoxicated, and Lampley was charged with possession of cocaine, two counts of battery, and criminal conversion. The State argues that the trial court did not abuse its discretion by limiting the scope of cross-examination because there were no offers of leniency given to either witness.

 The right to cross-examine witnesses is guaranteed by the Sixth

---

2. Even if this testimony were not used to prove the truth of the matter asserted, it is not clear that it is admissible under Evidence Rule 401. This testimony relates to an incident that occurred more than a week before Riggs' murder and Riggs could have acquired money in the interim. Accordingly, it is at best marginally relevant. However, under Evidence Rule 403's balancing test, the harm from its admission is equally dubious. Smith requested and received an admonishment to the jury that Jackson's testimony was not to be used to prove the truth of the matter asserted, leaving it unclear what, if anything, this testimony contributed to the trial.

Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution. It is "one of the fundamental rights of our criminal justice system." *Pigg v. State*, 603 N.E.2d 154, 155 (Ind.1992). To be sure, "this right is subject to reasonable limitations placed at the discretion of the trial judge." *McQuay v. State*, 566 N.E.2d 542, 543 (Ind.1991); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). "[T]rial judges retain wide latitude ... to impose reasonable limits ... based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Thornton v. State*, 712 N.E.2d 960, 963 (Ind.1999) (quoting *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431). It is also true that violations of the right to cross-examine are subject to harmless-error analysis. *See Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431; *see also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (a conviction will not be reversed if the State can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"). To determine whether an error is harmless, courts look to several factors, including the strength of the prosecution's case, the importance of the witness' testimony, whether the testimony was corroborated, the cross-examination that did occur, and whether the witness' testimony was repetitive. *See Van Arsdall*, 475 U.S at 684, 106 S.Ct. 1431.

 Brandle testified that Smith purchased a gun in December of 1996. Smith was not allowed to cross-examine her on a pending charge. In *Van Arsdall*, the United States Supreme Court held that "cutting off all questioning about an event that ... a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony ... violated respondent's rights secured by the Confrontation Clause." 475 U.S. at 679, 106 S.Ct. 1431. By refusing to permit Smith to question Brandle about her pending charges and any possible bias, the trial court abused its discretion and violated Smith's right to confrontation. Because a new trial is required for other reasons, we need not address whether this error was harmless.

 Smith also contends that he should have been allowed to question Lampley about his pending charges. Lampley was the only testifying eyewitness to the crime. His testimony, if credited, is plainly critical to the State's case. However, Smith was not allowed to cross-examine Lampley concerning his pending charges. Rather, Smith was permitted to question Lampley only about his release from jail after giving his statement about Riggs' murder. In this testimony, Lampley admitted, "I had a charge in here when I got picked up and ... it was a felony so it came in here." The trial court had granted a motion in limine that precluded Smith from asking Lampley about his pending charges. Although no written motion or court's ruling is in the record, the ruling is the subject of extended dialogue among the court, the prosecution, and the defense counsel. Apparently the trial court ruled, correctly under Indiana Evidence Rule 609, that it is not proper to impeach by evidence of charged crimes not reduced to conviction. *See Becker v. State*, 695 N.E.2d 968, 973 (Ind.Ct.App.1998). This is not the end of the analysis, however.

 The questioning of witness bias presents a different set of issues, and pending charges that are the basis of an arrangement with the witness are a proper subject of cross-examination. *Cf. Drollinger v. State*, 274 Ind. 5, 21–22, 408 N.E.2d 1228, 1239 (1980). The trial court ruled that Smith must first establish a relationship between Lampley's testimony and his release before inquiry into those charges was proper. The prosecution represented to the court that there was no "deal" with Lampley; however, the record contains a number of conflicting pieces of

evidence on this point.[3] Nonetheless, Smith had a constitutional right to confront the witness on the point and refusal to permit him to identify the charges or to inquire of Lampley's perceptions of the arrangement that resulted in his release on his own recognizance violated that right. *See Jarrett v. State*, 498 N.E.2d 967, 968 (Ind.1986) ("significant harm results when the jury is prevented from learning the extent of benefit received by a witness in exchange for his testimony"); *Pfefferkorn v. State*, 413 N.E.2d 1088, 1089 (Ind.Ct.App.1980) ("A witness's bias, prejudice or ulterior motives are always relevant in that they may discredit him or affect the weight of his testimony."). Because Lampley's testimony was essential to the State's case and is the lynchpin on which the State now claims the harmlessness of the errors already discussed, we cannot conclude that this restriction on exploring Lampley's bias was harmless beyond a reasonable doubt. However, because the evidence, specifically Lampley's testimony, was sufficient to support the jury's verdict, double jeopardy is no bar to a retrial. *See Thompson v. State*, 690 N.E.2d 224, 237 (Ind.1997).

## Conclusion

The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

DICKSON, SULLIVAN and RUCKER, JJ., concur.

SHEPARD, C.J., concurs with separate opinion.

SHEPARD, Chief Justice, concurring.

I view this as a "cumulative effect" reversal based on a number of errors that would not lead to reversal if they stood alone. In particular, in an otherwise cleaner record, I would not expect such a critical, post-hoc dissection of the open-ended Q & A that occurs daily in interrogation rooms.

---

**3.** The State contends that the testimony of Deputy Prosecuting Attorney David Puckett shows that no deal was made with Lampley for his testimony. Puckett testified that Lampley was released from custody after Lampley gave a statement concerning the murder because of a fear for his safety. The defense was allowed to cross-examine Puckett and attempted to show that Puckett agreed to Lampley's release in exchange for Lampley's testimony and not out of concern for his safety. Defense counsel questioned Puckett about statements he made to Lampley during Lamp-ley's taped interview, including the following: "[Puckett:] I think they made an arrangement that after you gave this, this statement today, ... we're gonna get you out of jail.... We're gonna make arrangements for a judge to released [sic] you on your own recognizance, is that right? Do you understand that? ... [Lampley:] Yes." Smith also offered evidence that Smith was transported to a different facility before Lampley was released which seemed to rebut Puckett's concern. Both of these suggest a genuine issue as to the basis of Lampley's release.