**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DYLAN A. VIGH**
Law Office of Dylan A. Vigh, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BIN MU, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1205-CR-310 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben Hill, Judge
Cause No. 49F18-1009-FD-71727

**January 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Bin Mu appeals his conviction of Criminal Confinement[1] as a class D felony and Battery[2] as a class A misdemeanor. Mu presents the following restated issues for review:

1. Did the trial court abuse its discretion in limiting the scope of Mu's cross-examination of certain witnesses?

2. Was the evidence sufficient to support the convictions?

3. Was Mu's sentence inappropriate?

We affirm.

The facts favorable to the convictions are that on September 14, 2010, fourteen-year-old R.P. went with her brother to a Burger King restaurant in Marion County, Indiana and got something to eat. After she was finished, R.P. walked outside in a parking lot adjacent to the restaurant and talked on her cell phone with her friend, Stephanie Strauss. As she walked toward the back of the restaurant, R.P. became aware that a white car was driving beside her. Mu, twenty-four years old at the time, was driving the car. Alarmed, R.P. walked quickly toward the restaurant. Meanwhile, she told Strauss over the phone what was happening. When R.P. quickened her pace, Mu stopped his car, got out, and began chasing R.P. Apparently, Mu believed that the phone R.P. was using had been stolen from him. Mu yelled at R.P. to give him her phone and then grabbed her, but she wrenched free and continued toward the back door of the restaurant. In the process, she inadvertently disconnected her call with Strauss. Mu caught up with R.P. about the time she reached the back door and had called Strauss back. Mu placed his foot against the door so R.P. could not open it and go

---

[1]  Ind. Code Ann. § 35-42-3-3 (West, Westlaw current through 2012 2nd Reg. Sess.).
[2]  I.C. § 35-42-2-1 (West, Westlaw current through 2012 2nd Reg. Sess.).

2

inside.  He yelled at R.P. to give him her cell phone while R.P. tried to tell Strauss what was happening.  Strauss could hear R.P. crying and screaming, and she could hear Mu yelling, "give me my phone, give me my phone, give me my phone." *Transcript* at 62.  Mu pinned R.P. against the wall and began slamming her back against the wall.  R.P. yelled at Strauss to get her (Strauss's) mother.  Strauss's mother got on the phone, heard what was happening, and called the police and then R.P.'s mother, Angela Fine-Pettigrew.

Fine-Pettigrew arrived first at the restaurant.  She saw that Mu had R.P. pinned against the restaurant and was beating her back and the back of her head against the wall.  Fine-Pettigrew pulled Mu off of R.P., sat him on the ground, and stood on his pant leg so he could not get up.  Fine-Pettigrew told Mu that he was "going to jail, you can't do that," and he responded that "he was not going to jail and he found it very amusing.  He was laughing." *Id*. at 79.  After another brief exchange, Mu got free and attempted to flee.  A man in the crowd that had gathered chased and caught Mu, and held him until police arrived a short time later.  As a result of the incident, R.P. suffered a cut on her nose, several bruises on her arms and back, and a knot on the back of her head, and her glasses were bent.

Mu was charged with criminal confinement as a class D felony and battery as a class A misdemeanor.  He was convicted as charged following a bench trial.  The court sentenced him to 545 days for the confinement conviction, with 120 days executed and 425 days suspended to probation.  He received 365 days for the battery conviction, with 120 days executed and 245 days suspended to probation.  The court ordered the two sentences to run concurrently.

3

1.

Mu contends the trial court infringed upon his Sixth Amendment right to cross-examine witnesses R.P. and Fine-Pettigrew. The right of cross-examination is a fundamental right of our criminal justice system, but is nevertheless "subject to reasonable limitations placed at the discretion of the trial judge." *Marcum v. State*, 725 N.E.2d 852, 860 (Ind. 2000) (quoting *Smith v. State,* 721 N.E.2d 213, 219 (Ind. 1999)). "[T]rial judges retain wide latitude ... to impose reasonable limits ... based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*. (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Reversal is not warranted on this basis absent a clear abuse of discretion. *Jenkins v. State*, 729 N.E.2d 147 (Ind. 2000). "To show an abuse of discretion, a defendant must demonstrate how he was prejudiced by the court's actions." *Marbley v. State*, 461 N.E.2d 1102, 1107 (Ind. 1984).

> The rulings of which Mu complains are set out in his argument as follows:
>
> Here, the trial court limited Mu's ability to cross-examine the State's witnesses by admonishing on several occasions to "move on" and "no, no more. Maybe we should move on. No more, no more." The trial court also admonished Mu when questioning [Fine-Pettigrew] as to whether her son, who was unavailable as a witness and working inside in the Burger King, came to assist his sister. The trial court stopped [Fine-Pettigrew] from finishing her answer stating: "Counsel get to the point". The trial court further remarked, "Move on please. I have an afternoon calendar that I would like to attend to". Moreover, the bench trial did not commence until approximately 10:30 a.m. and after the Court took a prolonged recess, the trial court judge remarked, "And I didn't expect to have court trials to … this morning so … are we ready to go back to work."

*Appellant's Brief* at 10 (internal citations omitted).

4

We have reviewed the instances of which Mu complains. The first reference, i.e., "move on", occurred during the cross-examination of Strauss, the friend to whom R.P. was speaking on the phone during Mu's attack. The relevant colloquy between defense counsel and Strauss was as follows:

Q:     And you were able to hear all of their conversation?

A:     No I just … that is what I was told.

Q:     That is what you were told?

A:     Yeah, she came … she said the car was chasing her and he … it stopped in front of her, got out and she started running. And then it stopped after that.

Q:     And approximately how long of a gap of time was it from the time that the phone call stopped till you initiated the second phone call?

A:     Less than, you know, five minutes. Probably less than three minutes.

Q:     Did you do it right away?

A:     Yes.

Q:     And did she answer?

A:     Yes she did.

*Transcript* at 70-71. At this point, the trial court asked counsel to "[m]ove on." *Id*. at 71.

We presume Mu's complaint here is premised upon the notion that he was prevented from asking further questions. It is not clear to us what further information counsel would have sought to elicit, nor does he enlighten us in that regard. In turn, we cannot assess how the presumably excluded evidence would have aided Mu's defense, and thus how its absence harmed his defense. As a result, Mu has not demonstrated how the court's request to "move

5

on" prejudiced him, the second of the required *Marbley* elements.

Mu also cites trial court comments made during Fine-Pettigrew's cross-examination. Counsel questioned her about whether her son, i.e., R.P.'s brother, came out of the restaurant to assist his sister. It was during Fine-Pettigrew's answer to that question that the trial court interjected, "Counsel, get to the point." It is unclear to us how this constituted a limitation upon the questioning of Fine-Pettigrew. No question or subject matter was disallowed by the admonition.

Counsel then asked Fine-Pettigrew "And you indicated that you saw Mr. Mu beating your daughter's head against the door?" *Transcript* at 93. She replied, "The wall." *Id.* Counsel followed up with, "The wall." *Id.* At this point, the trial court interjected a comment about which Mu now complains, i.e.: "Counsel, that question has been asked and answered at least twice. Move on please. I have an afternoon calendar that I would like to attend to." *Id.* In fact, defense counsel had indeed on two previous occasions asked questions that elicited an answer from Fine-Pettigrew to the effect that she had seen Mu beating R.P. against a wall of the restaurant. Once again, it is not clear to us how this request to refrain from repeatedly asking the same question on this matter constituted an impermissible limitation on the scope of counsel's cross-examination of Fine-Pettigrew. If anything, it merely prevented a fourth and perhaps subsequent queries as to what surface Fine-Pettigrew saw Mu beating her daughter against. We interpret the reference to the court's calendar as mere emphasis of its point that repeating the same question was not viewed with favor. As with the instances addressed above, Mu has not demonstrated how he

was prejudiced by the trial court's comments, and therefore his claim of a Sixth-Amendment violation on this basis fails.

The remaining reference consists of the following statement: "And I didn't expect to have court trials to … this morning so … So we are ready to go back to work." *Id.* at 58. Although Mu seems to imply that these comments reflect the trial court's determination to rush his defense unnecessarily and to his detriment, these particular comments actually accompanied a trial-court apology for a longer-than-expected recess. It had nothing to do with cross-examination. Again, at a minimum, Mu has failed to identify any prejudice. Mu does not support his claims that the trial court abused its discretion in regulating the scope of cross-examination with a showing of the requisite prejudice, and therefore they are without merit.

2.

Mu contends the evidence was not sufficient to support the convictions. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When considering such a challenge, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State*, 953

7

N.E.2d 1039 (Ind. 2011). Moreover, the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal. *Reed v. State,* 748 N.E.2d 381 (Ind. 2001).

In this case, Mu seeks a ruling that, by application of the principle of incredible dubiosity, R.P.'s testimony is not worthy of belief. Our Supreme Court has cautioned that this rule is "very narrow" and limited in application. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). Testimony may be disregarded on this basis, only "'where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt.'" *Id*. (quoting *Wheldon v. State,* 765 N.E.2d 1276, 1278 (Ind. 2002)).

The rule does not apply here for several reasons, not the least of which is because R.P.'s testimony is not uncorroborated. She testified that Mu beat her against a wall of the restaurant and that testimony was corroborated by Fine-Pettigrew. Moreover, we find nothing inherently improbable about R.P.'s description of the incident. The matters about which Mu complains, such as the fact that no one came to R.P.'s assistance until Fine-Pettigrew arrived, merely go to the weight of R.P.'s testimony. The evidence was sufficient to support Mu's conviction.

3.

Mu contends his sentence was inappropriate in light of his character and the nature of his offenses. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the

Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d at 1223. Mu bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006). Moreover, "revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis in original). A claim that omits argument with respect to either the appellant's character or the nature of the offense is subject to waiver. *See Williams v. State*, 891 N.E.2d 621.

> Mu's entire argument on this issue is as follows:
>
> Here, Mu testified at sentencing that he did not have a criminal history, adhered to the conditions of his bond, maintained gainful employment, and appeared at every scheduled hearing. In light of the foregoing mitigators, Mu's sentence was inappropriate in light of the nature of the offense and his demonstrated character, which showed that he could successfully rehabilitate without the imposition of an executed sentence. It is for these reasons that Mu requests that this court reverse the trial court and remand with instruction to impose a mitigated sentence.

*Appellant's Brief* at 11 (internal citations omitted). Mu's argument discusses only his character and entirely omits any discussion of the nature of his offense. Therefore, the argument is waived. *Williams v. State*, 891 N.E.2d 621.

9

Mu's argument would fail on the merits even were it not waived. Mu points out that he has no criminal history,[3] which the trial court identified as a mitigator. Mu also cites in mitigation the facts that he adhered to the conditions of his bond, maintained gainful employment, and appeared at all hearings in this matter. Even accepting for the sake of argument that these were proper mitigators in this case, we find that they would be entitled to minimal weight. The trial court found, however, that the victim's age was an aggravating factor. The court also found Mu's lack of remorse as an aggravator. The court explained: "Also find the fact that you have not accepted responsibility for this matter at all, no contrition whatsoever for the injuries that were caused by you and your ill[-]advised attempt to retrieve a cell phone from this young lady, this girl, that was not yours to begin with." *Transcript* at 116. Ultimately, the court found that the aggravators outweighed the mitigators and imposed the advisory 1.5-year sentence for the confinement offense, with all but 120 days suspended to probation, and the maximum 1 year for the battery offense, with all but 120 days suspended to probation, with both sentences to run concurrently. Even were the issue not waived, we do not find this sentence inappropriate in light of Mu's character and the nature of his offenses.

Judgment affirmed.

---

[3] Mu's appendix contains a copy of the presentence investigation report on white paper, in violation of the Indiana Rules of Court. Indiana Administrative Rule 9(G)(1)(b)(viii) provides that "[a]ll presentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "confidential." Indiana Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Indiana Trial Rule 5(G) states, "Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked Not for Public Access or Confidential."

NAJAM, J., and BRADFORD, J., concur.