## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2015, 10:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Matthew J. McGovern<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Brian Reitz<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Katyun Marsh,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff* | April 8, 2015<br><br>Court of Appeals Case No.<br>82A01-1405-CR-233<br><br>Appeal from the Vanderburgh<br>Circuit Court.<br>The Honorable David D. Kiely,<br>Judge.<br>Cause No. 82C01-1306-MR-638 |

**Baker, Judge.**

[1] Katyun Marsh appeals his conviction for Murder, a felony.[1] Marsh argues that the trial court erred by admitting into evidence a video of his interview with police that Marsh believes contained inadmissible hearsay. Marsh also argues that his sentence is inappropriate in light of the nature of the offense and his character. Finding no error, we affirm.

## Facts[2]

[2] In 2013, Angela Dixon lived in an apartment in Evansville with her seventeen-year-old daughter, J.D. On June 5, 2013, Melinda Welborn and her daughter, Carrie Burton, were visiting Dixon at the apartment. Dixon and Welborn had been dating but had broken up a few days prior to this incident. Dixon, Welborn, and Burton got into an argument, after which Burton threatened Dixon. J.D. left the apartment at 9 p.m. and spent the night with a friend because of the argument.

[3] At around 2 a.m. the following morning, Dixon, concerned that Burton would carry out her threat, texted her friend Brandi Phillips and asked if she would come over. At the time, Phillips was with Blake Fisher and Marsh. Phillips agreed to come over and left in a taxi along with Fisher and Marsh.

---

[1] Ind. Code § 35-42-1-1.

[2] We held oral argument on March 12, 2015, at Culver Academies in Culver, Indiana. We wish to thank Culver Academies for the wonderful hospitality as well as counsel for their exceptional oral advocacy.

[4] The three arrived at Dixon's apartment around 4 a.m. Phillips and Fisher went inside, but Dixon asked that Marsh remain outside because she did not know him. Marsh eventually entered the apartment about thirty minutes later. After about two hours, Phillips decided that it was time to leave. Dixon did not want Phillips to leave, but Phillips replied that it was getting late.

[5] When the three exited Dixon's apartment, Marsh stated that Dixon owed him five dollars for marijuana and that he was going to get it. He re-entered the apartment along with Phillips and Fisher. Marsh approached Dixon, pulled a gun from his pants, and ordered her to give him all the money she had. When Dixon responded that she didn't have any, Marsh shot Dixon in the face, killing her.

[6] The three left the apartment and walked across the street. Marsh threatened to shoot Phillips if she stopped walking. Once across the street, they waited for a taxi outside of a WalMart. The same taxi that had taken them to Dixon's arrived and took them to Phillips's apartment. Phillips was in hysterics while in the taxi. At the apartment, Marsh told Fisher that he wanted to kill Phillips because he was afraid that she would give information to the police.

[7] On June 6, 2013, at around 10 a.m., J.D. returned home to find her mother dead. One of J.D.'s friends called the police. Later that day, Detective Mike Sloat interviewed Phillips. Although Phillips did not initially implicate Marsh, she eventually said that she had seen Marsh shoot Dixon. Fisher eventually said the same thing.

[8] Marsh was apprehended on June 7, 2013. Detective Brent Melton interviewed him that same day. During the interview, Detective Melton told Marsh that Marsh's cousin, Alisha Robinson, spoke to an investigator and said that on June 6, 2013, Marsh had broken down in front of her and told her that he had gotten involved in something he shouldn't have. Marsh explained that he had called Robinson and that he became emotional because of other drama in his life.

[9] Later that day, Marsh was charged with murder, felony murder, robbery resulting in serious bodily injury, armed robbery, and conspiracy to commit armed robbery. A jury trial was held, during which the jury was shown a video of Detective Melton's interview with Marsh. On April 4, 2014, Marsh was found guilty of murder and not guilty of all other counts. On May 1, 2014, the trial court sentenced Marsh to sixty years executed. Marsh now appeals.

# Discussion and Decision

## I. Hearsay

[10] Marsh first argues that the trial court erred in admitting into evidence a portion of the videotaped interview in which Detective Melton questioned Marsh about his conversation with Robinson. We review a trial court's decision to admit evidence for an abuse of discretion. *Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effects of the facts and circumstances before the court or if the court misinterprets the law. *Id.*

Marsh contends that Detective Melton's statements about Robinson telling an investigator that Marsh broke down in front of her constituted inadmissible hearsay. Hearsay is an out-of-court statement used to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless it falls under a hearsay exception.[3] *Teague*, 978 N.E.2d at 1187. However, "[a] statement is not hearsay if it is not used to prove the truth of the matter asserted." *Smith v. State*, 721 N.E.2d 213, 216 (Ind. 1999).

At trial, the State requested a hearing outside the presence of the jury. The State had produced two redacted videos of Detective Melton's interview with Marsh, one of which redacted the portion in which Detective Melton questioned Marsh about his conversation with Robinson. Marsh objected to the admission of this portion, but the trial court overruled his objection. The relevant portion of the video contains the following exchange:

| | |
|---|---|
| Melton: | . . . let's back up a minute. Who is Alisha Robinson? Is that a cousin? |
| Marsh: | Yeah, that's my cousin. |
| Melton: | I want to hear about this conversation you had where you were upset and crying and you told her that you got involved in something you shouldn't have got involved in, and you (unintelligible) and you fell down, and you curled up crying like into a ball, and just very upset. |
| Marsh: | (Unintelligible) |

---

[3] Here, Marsh claims that Detective Melton's statement is actually hearsay within hearsay, because Detective Melton's out-of-court statement relayed an out-of-court statement made by Robinson. "If a statement involves hearsay within hearsay . . . the statement may still be admitted if each layer of hearsay qualifies under an exception to the hearsay rule." *Teague*, 978 N.E.2d at 1187 (quotations omitted).

Melton: I'm just telling you what she told one of the investigators. Want to tell me about the conversation?

*** 

Marsh: Mid-day yesterday, I called my cousin up, I asked her . . .

Melton: This is Alisha Robinson?

Marsh: Yeah, I was like I gotta go cause, I can't take it no more here in Evansville, I don't like it no more, I gotta go, and I started (unintelligible).

Melton: Crying and that stuff?

Marsh: I am an emotional person. If I gotta cry I'm gonna cry, I'm not gonna hide it, I mean . . .

Melton: But, and that's . . . I know I've broken down. I've had traumatic things happen in my life, and I'm asking, what made you break down?

Marsh: What made me break down? Cause I'm tired of all this drama.

Melton: What drama?

Marsh: The drama in my life. I mean, the little stuff counts man, and I'm talking about people robbing me, people putting my name in situations that it don't belong, me being in the wrong places at the wrong time, people using me. . . .

Tr. p. 750-53.

[13] Marsh contends that the State introduced these statements to prove that Marsh had broken down in front of Robinson, claiming that he had been involved in something he shouldn't have been. He argues that the State used this evidence to show that he had effectively admitted to Robinson that he committed the murder. The State maintains that Detective Melton's statements were merely

"question[s] designed to elicit a response about Marsh's interactions with his cousin after the murder." Appellee's Br. p. 13.

[14] Our Supreme Court has noted that "police questions and comments in an interview may be designed to elicit responses from the defendant and if so, are 'not offered as proof of the facts asserted therein.'" *Smith*, 721 N.E.2d at 216 (quoting *Strong v. State*, 538 N.E.2d 924, 928 (Ind. 1989)). The Court has reasoned that, because such statements are "largely designed to prompt" the defendant to speak, it is not the statement itself, but rather the defendant's response to it "that really constitute[s] the evidentiary weight of the conversation." *Williams v. State*, 669 N.E.2d 956, 958 (Ind. 1996). Therefore, such prompting statements are not hearsay.

[15] For instance, in *Strong*, the State offered a video of Strong's interview with police officers as evidence. Strong objected to the following portion on hearsay grounds:

> Q:     Okay. There's a lot of things, [Strong], I want to caution you on one thing. Physical evidence proof, stuff that Lt. Loy saw and found in your house on that night.
>
> A:     Yes and I told him everything about that.
>
> Q:     Doesn't match stuff that you tell us. . . .

*Strong*, 538 N.E.2d at 928. Our Supreme Court found that "[t]hese statements by the police officer were not inadmissible hearsay because they were not offered as proof of the facts asserted therein." *Id.* The Court further noted that

the jury had been admonished to not consider the officer's statements as evidence. *Id.*

[16] However, the Court reached the opposite conclusion in *Smith*. 721 N.E.2d 213. In that case, the State once again sought to introduce a video of the defendant's interview with an officer. During the interview, the officer made the following statements:

> [H]alf of the people at the jail's [sic] called me wanting to tell me that you did it[.]
>
> [Lampley] said you did it because it was over him [Riggs] ripping you off your dope, your stash.

*Id.* at 216. The Court found that, "the lack of an admonishment in this case combined with the fact that the statements appear to be assertions of fact by the detective, not mere questions, renders their admission error." *Id.*

[17] In this case, we find that Detective Melton's statements were largely designed to prompt a response from Marsh. Although Detective Melton's statements contained assertions of fact to the extent that they referenced Robinson's statements, they functioned primarily as questions, and are therefore distinguishable from the bald accusations at issue in *Smith*. *Id.* Furthermore, the statements did indeed prompt a response. Following Detective Melton's statements, Marsh spoke at relative length about his conversation with Robinson, and Detective Melton did not contradict Marsh's version of the events.

[18] We acknowledge that the jury was not admonished in this case. We note, however, that Marsh did not request such an admonishment and "a trial court has no affirmative duty to consider giving an admonishment absent a party's request to do so." *Id.* While we believe our decision would have been easier had such an admonishment been given, we do not find that, under the circumstances presented here, the lack of an admonishment rendered the admission of Detective Melton's statements error. In short, we find that the trial court did not err in determining that Detective Melton's statements were largely designed to prompt a response from Marsh and, therefore, not hearsay.[4]

[19] Moreover, even if the trial court erred in admitting Detective Melton's statements, we believe that such error was harmless. "Generally, errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). In determining whether a defendant's substantial rights were affected, we look to the probable impact of the evidence on the fact finder. *Id.* The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt that satisfies the reviewing court that there is no substantial likelihood that the challenged evidence contributed to the conviction. *Id.*

---

[4] Because we find that this evidence is not hearsay, we need not consider Marsh's claim that it is testimonial hearsay, the admission of which would have violated Marsh's right to confrontation under the Sixth Amendment. "[I]f a statement is either nontestimonial or nonhearsay, the federal Confrontation Clause will not bar its admissibility at trial." *Vaughn v. State*, 13 N.E.3d 873, 879 (Ind. Ct. App. 2014), *trans. denied*.

[20] Here, Marsh's conviction was supported by the eyewitness testimony of Fisher and Phillips. Both witnesses testified that Marsh shot and killed Dixon. However, Marsh argues that, because "there was no physical evidence to eliminate [Fisher] or [Phillips] as the murderers," each had a compelling reason to lie. Appellant's Br. p. 16. Marsh concludes that Detective Melton's statement regarding what Robinson told an investigator was "the only testimony directly implicating Marsh that did not come from a witness with a powerful reason to falsely implicate Marsh." *Id.* at 17.

[21] We fail to see how Detective Melton's statements about Marsh's conversation with Robinson directly implicated Marsh in the murder. After being prompted by Detective Melton, Marsh gave his version of the conversation he had with Robinson. As previously noted, Detective Melton did not contradict Marsh's characterization of his conversation with Robinson. Because all of Marsh's statements in the interview would have been admissible,[5] Detective Melton's statements primarily serve to give context to Marsh's statements. As such, we do not find it likely that these statements had a significant impact on the jury's decision.

---

[5] Statements made by an opposing party in an individual or representative capacity are not hearsay. Evid. R. 801(d)(2).

# II. Appropriateness of Sentence

[22] Marsh next challenges the appropriateness of his sentence. Under Indiana Appellate Rule 7(B), "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade us that his sentence is inappropriate. *Teague*, 978 N.E.2d at 1189.

[23] In this case, the jury found Marsh guilty of murder. "A person who commits murder shall be imprisoned for a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years." Ind. Code § 35-50-2-3. After a hearing, the trial court sentenced Marsh to an executed term of sixty years.

[24] Regarding the nature of his offense, Marsh argues that the offense "was not committed with any brutality not already inherent in the crime of murder." Appellant's Br. p. 20. Regarding his character, Marsh points out that he was only nineteen at the time of the offense and notes that "[a] defendant's young age is to be given considerable weight as a mitigating circumstance." *Brown v. State*, 720 N.E.2d 1157, 1159 (Ind. 1999). Marsh also notes that his only prior adult conviction was for misdemeanor criminal conversion. Appellant's Br. p. 19. All of Marsh's other criminal history involves juvenile adjudications. *Id.* Finally, Marsh notes that he had a difficult upbringing as his father has been incarcerated for nearly all of his life. *Id.*

[25]     However, the trial court considered all of these points prior to sentencing Marsh. Sent. Tr. p. 13-15. As to the nature of the offense, the trial court noted that Marsh shot Dixon over a small amount of money.[6] The court further noted that Marsh had never met Dixon and that he was a guest in Dixon's home at the time. In light of this, the court concluded that this murder was particularly senseless.

[26]     As to Marsh's character, the court noted his young age and difficult upbringing. However, the court weighed this against Marsh's three previous juvenile adjudications. In the end, the trial court determined that the senselessness of the murder combined with Marsh's significant juvenile history were substantial aggravating factors, outweighing the mitigating factors of his age, difficult upbringing, and his relatively insignificant adult criminal history.[7]

[27]     We note that the principal role of appellate review of sentences should be to attempt to leaven the outliers rather than to achieve a perceived "correct" result

---

[6] Marsh contends that this is an improper aggravating factor. Marsh notes that he was charged with robbery resulting in bodily injury and armed robbery—for taking money from Dixon—and was acquitted on both counts. Therefore, Marsh argues that the trial court improperly considered charges on which he had been acquitted as aggravating factors. However, the trial court did not determine that Marsh committed robbery, but merely noted that he likely killed Dixon over a small amount of money. As substantial evidence indicated that this was the case, the trial court did not err in considering this as an aggravating factor.

[7] In this case, the trial court issued an oral sentencing statement during the sentencing hearing. Sent. Tr. p. 13-15. Marsh argues that it is not clear from the trial court's sentencing statement whether it considered particular factors as aggravators or mitigators. However, we believe that Marsh's argument elevates form over substance. It is perfectly clear which factors the trial court considered mitigating and which factors it considered aggravating. We believe the trial court's sentencing statement adequately serves its purpose of protecting against arbitrary sentencing and facilitating appellate review of sentences. *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

in each case. *Teague*, 978 N.E.2d at 1189. "We must give deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Id.* (quotations omitted). With this in mind, we do not find Marsh's sixty-year sentence inappropriate in light of the nature of the offense and his character.

[28] The judgment of the trial court is affirmed.

Riley, J., and Robb, J., concur.