## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 18 2019, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Devin Ray Warren, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 18, 2019 <br><br> Court of Appeals Case No. 18A-CR-1976 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg, Judge <br><br> Trial Court Cause No. 49G02-1710-F3-37801 |

**Bailey, Judge.**

# Case Summary

After representing himself at a bench trial, Devin Ray Warren ("Warren") was convicted of two counts of Armed Robbery as Level 3 felonies;[1] Robbery as a Level 5 felony;[2] and Theft as a Class A misdemeanor.[3] He now appeals.

We affirm.

# Issues

Warren presents the following restated issues:

I. Whether the trial court erred by accepting a waiver of the right to counsel on the day of the bench trial.

II. Whether the trial court improperly limited Warren's cross-examination of a detective.

III. Whether the State presented sufficient evidence to support the conviction for Theft.

# Facts and Procedural History

A rash of thefts and robberies took place inside Indianapolis gas stations over the course of a few days in September 2017. An investigation ensued, led by

---

[1] Ind. Code § 35-42-5-1(a).

[2] *Id.*

[3] I.C. § 35-43-4-2(a).

Detective Paul Buchman ("Det. Buchman") of the Indianapolis Metropolitan Police Department. The investigation led to Charles Hunter ("Hunter"), who confessed and said that Warren had driven him to some of the gas stations.

[5] The State charged Warren as an accomplice, and a bench trial was scheduled for May 29, 2018, on the following charges:

- Count 1: Theft as a Class A misdemeanor, committed on September 18, 2017, at a Phillips 66 on East 30th Street.
- Count 2: Robbery as a Level 5 felony, committed on September 18, 2017, at a Marathon on Shadeland Avenue.
- Count 3: Theft as a Class A misdemeanor, committed on September 18, 2017, at a Speedway on German Church Road.
- Count 4: Armed Robbery as a Level 3 felony, committed on September 19, 2017, at a Speedway on East Prospect Street.
- Count 5: Armed Robbery as a Level 3 felony, committed on September 23, 2017, at a Shell on North Post Road.

[6] The day of trial, Warren stated that he wanted to represent himself, explaining: "There was . . . evidence I wanted to see yesterday evening. [Counsel] refused to show it to me, so I terminated him." Tr. Vol. II at 5. During an ensuing colloquy, Warren said he completed two years of college. Warren confirmed that he could read and write English, and that he understood the charges and the possible penalties, that he had the right to counsel, and that he would be held to the same standards as an attorney. The court advised Warren against self-representation. Warren then confirmed that he wished to represent himself at trial that day, and that no one had forced or threatened him. The trial court found that Warren "knowingly and willingly waives his right to an attorney." *Id.* at 10. The court then appointed standby counsel, and the trial commenced.

[7] At trial, there was evidence that, around 4:40 a.m. on September 18, 2017, Hunter took chips and a drink from the Phillips 66 on East 30th Street. Within the next thirty minutes, Hunter went behind the counter at a Marathon on Shadeland Avenue—not far from the Phillips 66—and took packs of cigarettes. Later that evening, around 10:30 p.m., Hunter went into the Marathon on German Church Road, and brought two drinks to the counter. A gas station employee retrieved two cartons of cigarettes and put them on the counter. Hunter then took the cigarettes and walked out, leaving the drinks behind.

[8] The next evening, Hunter entered the Speedway on East Prospect Street and acted as if he was purchasing a drink. Hunter then showed a hammer to a gas station employee and went into a back office. Hunter loaded cigarettes into a bag, then left. A few days later, on September 23, Hunter went to a Shell on North Post Road. When an employee entered a door code to access a secured area behind the counter, Hunter followed the employee inside. Hunter was holding a knife. Hunter told the employee not to move, and that Hunter just wanted cigarettes. Hunter took about thirty cartons of cigarettes, then left.

[9] Det. Buchman spoke with Hunter, who confessed to a series of robberies and thefts, and implicated Warren as his driver. Det. Buchman then spoke with Warren, who admitted to driving Hunter to all five gas stations. Warren was unsure if the Phillips 66 was the first gas station. Warren said that, at the first gas station, he did not know what Hunter was doing—but that, when Hunter returned to the truck, he said: "Go. Go. Go." Ex. 24 at 17:26. Warren then had an idea of what was happening. Warren recalled Hunter taking a hammer from

Warren's truck into one gas station, and that Hunter took a knife into another gas station. Warren said that he would drive Hunter places to sell cigarettes, and that, at times, Hunter would give him "dope" and gas money. *Id.* at 24:20.

The trial court found Warren not guilty of Count 1—which pertained to the Phillips 66—and guilty of the remaining counts. Warren was sentenced to a combination of executed time, home detention, suspended time, and probation.

Warren now appeals.

# Discussion and Decision

## Waiver of Right to Counsel

The Sixth Amendment to the United States Constitution, applied to Indiana through the Fourteenth Amendment, confers both the right to the assistance of counsel and the conflicting right of self-representation. *Faretta v. California*, 422 U.S. 806 (1975).[4] "A request to proceed pro se is a waiver of the right to counsel, and consequently, there are several requirements to invoking the right of self-representation successfully." *Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004). Indeed, the waiver of the right to counsel must be knowing, intelligent, and voluntary. *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). Moreover,

---

[4] Article 1, Section 13 of the Indiana Constitution also confers these rights. *Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004); *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). However, in presenting this issue, Warren does not mention the Indiana Constitution, let alone offer a separate analysis under the state constitution. He has therefore waived any state constitutional claim. *Dye v. State*, 717 N.E.2d 5, 10 n.2 (Ind. 1999).

"the right of self-representation must be asserted within a reasonable time prior to the day on which the trial begins." *Russell v. State*, 270 Ind. 55, 383 N.E.2d 309, 314 (1978). "Morning of trial requests are . . . per se untimely," *id.*, and a trial court does not offend the right of self-representation by summarily denying such requests, *id.* at 315. Nevertheless, even though summary denial is proper, a trial court may—as "a matter of grace"—elect to consider a belated request. *Id.* Indeed, a "request made the day of trial or later . . . is completely a matter of the trial court's discretion." *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). Moreover, "[w]e review de novo a trial court's finding that a defendant waived his right to counsel." *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013), *trans. denied*.

[13] According to Warren, the trial court should not have accepted the waiver of the right to counsel, thereby permitting self-representation, because Warren did not assert the right to self-representation until the day of the trial. Warren argues that such a belated request "is nearly always going to be a rushed, bad idea with insufficient thought and reflection by the defendant." Br. of Appellant at 16. Yet, there is no *per se* rule requiring the denial of day-of-trial requests. Rather, a trial court may either (1) summarily deny a belated request to proceed *pro se* or (2) consider the request as a matter of grace. *See Russell*, 383 N.E.2d at 315. Here, the court considered the request—acting within its discretion in doing so. *See id.* Warren does not direct us to any defect concerning the knowing, voluntary, and intelligent nature of his waiver of the right to counsel—and we

discern none. Thus, we cannot say that the trial court erred by considering, and ultimately granting, Warren's belated request to represent himself.

## Cross-examination

[14] Warren contends that the trial court erred by limiting cross-examination of Det. Buchman. Warren first focuses on the following exchange:

> Q. Does any video or any information show my truck being used during the commission of any of these robberies?
>
> A. Yes. The one at Prospect and Keystone.
>
> Q. During the commission of a robbery? He was let out of my truck. The truck pulled away, sir. Gone. Never to be seen again. Is it there during the commission of a robbery? Yes or no[?]
>
> A. Yes.
>
> Q. Where is it at?
>
> A. It was in the -- that is the -- that is the start of the commission of a robbery.
>
> Q. Detective, please stop.
>
> A. When you drop somebody off at the scene and they go in and commit a robbery, that's all part of the commission of the robbery.

Q. Do you know that merely giving someone a ride -- this is the -- this is the Indiana case law. Just giving someone a ride does not constitute breaking the law?

[State]: Judge, I'm going to object to whether or not he knows that Indiana law states that merely giving a ride to somebody is not enough. I don't think that's in the detective's --

[Court]: It's a legal conclusion. I'll sustain the objection. Move on.

[Warren]: I'm just saying what an inmate has to use when we research our cases. This is all we have. I'm just stating what I found, sir.

[Court]: Mr. Warren, while I appreciate that, that's something you want to argue to me.

[Warren]: Oh.

[Court]: That's not evidence. Okay.

[Warren]: That's something I should argue?

[Court]: That's up to you. I'm just saying that's something you could argue.

[Warren]: Oh, okay.

Tr. Vol. II at 119-20.

[15] Warren next directs us to the following exchange:

Q.      Okay. . . . I stated at different times for different of [*sic*] these robberies a place where I had parked.  Did you investigate and confirm what the store employees had said about the parking?

A.      Not with the store employees, no.

Q.      With who?  Whom did -- did you corroborate it with?

A.      I went back out to the scenes to see if I could find any video based off where you told me you had parked at.  I also checked the video angles from all of the businesses.  I was not able to locate any video of your vehicle parked in any of these places.

A.      Thank you for that.  Once again, I will say that the witnesses were not here to answer questions, so I'm going to have to ask you.  I don't know how you are going to come up with this, but what vehicles did they see used as a get-away?

       [State]:      Objection, Your Honor.  He would not know that, which --  that the victim said was the get-away car.  He would not -- this would not be in the personal knowledge of the detective on each of those days.

       [Court]:      All right.  Objection is sustained.

       [Warren]:    Okay.

*Id.* at 130-31.

[16] Warren argues that the trial court improperly limited cross-examination on both occasions, affronting his constitutional rights. We note that a court has broad discretion to admit or exclude evidence, and we reverse its rulings only upon an abuse of that discretion. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). Further, to the extent a ruling turns on a question of law, we review questions of law *de novo*. *See Fowler v. State*, 829 N.E.2d 459, 465-466 (Ind. 2005).

[17] The right to cross-examine witnesses—embodied in the Sixth Amendment to the United States Constitution—"is 'one of the fundamental rights of our criminal justice system.'"[5] *Smith v. State*, 721 N.E.2d 213, 219 (Ind. 1999) (quoting *Pigg v. State*, 603 N.E.2d 154, 155 (Ind. 1992)). However, this right "is subject to reasonable limitations placed at the discretion of the trial judge." *Smith*, 721 N.E.2d at 219 (quoting *McQuay v. State*, 566 N.E.2d 542, 543 (Ind. 1991). Indeed, "trial judges retain wide latitude . . . to impose reasonable limits . . . based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

---

[5] Article 1, Section 13 of the Indiana Constitution also confers this right, but Warren only cursorily mentions state constitutional authority. Where a party cites to the Indiana Constitution but "presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim 'on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be' under the Indiana Constitution." *Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005) (quoting *Williams v. State*, 690 N.E.2d 162, 167 (Ind. 1997)).

[18]     In the first line of questioning, Warren seemingly sought to elicit testimony that Warren could not be criminally culpable for merely driving Hunter.[6] Yet, Indiana Evidence Rule 704 provides that "[w]itnesses may not testify to . . . legal conclusions" or to "opinions concerning intent, guilt, or innocence in a criminal case." As to the second exchange, Warren seemingly sought to elicit testimony that was either hearsay or outside of Det. Buchman's personal knowledge—evidence that is also generally prohibited. *See* Ind. Evid. Rules 602, 801 & 802. Warren has not demonstrated that these evidentiary rulings amounted to a constitutionally unreasonable limitation of cross-examination. Furthermore, even assuming error, in light of the strength of the case against Warren—including his confession—we conclude that any error was harmless beyond a reasonable doubt. *See Smith*, 721 N.E.2d at 219 ("[V]iolations of the right to cross-examine are subject to harmless-error analysis.").

## Sufficiency of the Evidence

[19]     In reviewing a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016). We look only at the probative evidence and reasonable inferences supporting the conviction and "will affirm the conviction unless no

---

[6] In light of our preference to resolve cases on the merits, *see Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015), we put aside the question of whether Warren waived this constitutional claim by failing to make an offer of proof pursuant to Indiana Evidence Rule 103(a).

reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[20] Warren challenges the sufficiency of the evidence supporting his conviction for Theft as a Class A misdemeanor—the count pertaining to the Speedway gas station on German Church Road. To obtain this conviction, the State was obligated to prove that Warren "knowingly or intentionally aid[ed]" Hunter in committing the offense, I.C. § 35-41-2-4, and that Hunter had "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value," I.C. § 35-43-4-2.

[21] Warren does not appear to dispute the sufficiency of evidence that he aided Hunter. Warren instead challenges the sufficiency of evidence that Hunter committed Theft. Among the evidence is surveillance footage showing the counter inside the gas station—on which Hunter placed two drinks, and a gas station employee placed two cartons of cigarettes. Hunter left the drinks and walked out with the cigarettes, at which point the employee hurried out behind Hunter. A manager—not present at the time—testified that she had reviewed the footage, and did not see Hunter pay with cash or a credit card. Moreover, Warren told Det. Buchman that Warren had parked in an apartment complex nearby the gas station. Warren remembered that Hunter ran back to the truck.

[22] Warren argues that the gas station employee had not testified, and that Hunter could have paid through a "contactless" payment method that "does not require the exchange from person to person of a card or cash." Br. of Appellant

at 17.  Yet, we may not reweigh the evidence.  Rather, there was sufficient evidence from which a reasonable fact-finder could conclude that Hunter committed Theft, and that Warren knowingly aided Hunter in doing so.

# Conclusion

[23]    The court did not err by accepting—on the day of trial—a waiver of the right to counsel.  As to any limitation of cross-examination, Warren has not identified reversible error.  Finally, sufficient evidence supports the conviction of Theft.

[24]    Affirmed.

Bradford, J., and Brown, J., concur.